of the Ninth Circuit
125 South Grand Avenue, Pasadena, California, 91105
Appeals from Central California   (626) 229-7220
Appeals from all other Districts (626) 229-7225

E-filing

In Re:   CONNECTIX CORPORATION

BAP No.: NC-07-1200

Bankruptcy No(s).: 05-55648-MM

Adversary No(s).:

C 07   3192   RMW


NOTICE OF TRANSFER OF APPEAL TO DISTRICT COURT


A party to the appeal has timely filed an objection to the
disposition of this matter by the Bankruptcy Appellate Panel.
See 28 USC Section 158.  Consequently, this appeal is herewith
transferred to _____SAN FRANCISCO DISTRICT COURT_____.

Please acknowledge receipt of the case file listed above
by signing and returning a copy of this transmittal form.


Harold S. Marenus, BAP Clerk


By: Edwina Clay
    Deputy Clerk

Date: June 11, 2007


Please acknowledge receipt of
the case file listed above.

Dated:_____

Signed:_____
        District Court Deputy

Assigned District Court No.

_____


cc: Bankruptcy Court
    All Parties

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OFFICE OF THE CLERK
280 South First Street, Room 3035
San Jose, CA 95113-3099

**FILED**

MAY 2 1 2007

E-filing

CLERK
United States Bankruptcy Court
San Jose, California

## TRANSMITTAL FORM

RICHARD W. WIEKING,
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

C 07    3192 **RMW**

TO:    Bankruptcy Appellate Panel of the Ninth Circuit, 125 S. Grand Avenue, Pasadena, CA, 91105

BAP# NC-07-1200

| | |
|---|---|
| CASE NAME: | Connectix Corporation, a California corporation |
| BANKRUPTCY NO.: | 05-55648 -MM |
| BANKRUPTCY CHAPTER: | 7 |
| BANKRUPTCY JUDGE: | Morgan |
| DATE NOTICE OF APPEAL FILED: | 5/17/2007 |
| DATE OF ENTRY OF ISSUE: | 5/10/2007 |
| DATE BANKRUPTCY FILED: | 9/9/2005 |
| NOTICE OF OBJECTION FILED: | |
| DATE OF TRANSMITTAL: | 5/21/2007 |

RECEIVED
Harold S. Marenus, Clerk
U.S. BKCY.APP.PANEL
OF THE NINTH CIRCUIT

MAY 2 3 2007

FILED
DOCKETED 5/31 a
              DATE        INITIAL

PLEASE STAMP YOUR CASE NUMBER on a copy of this transmittal form and return the copy to the bankruptcy court.

_____
Deputy Clerk



1 | JAMES A. TIEMSTRA (Bar No. 96203)
LAW OFFICES OF JAMES A. TIEMSTRA
2 | Tribune Tower
409 Thirteenth Street, 15th Floor
3 | Oakland, CA 94612
Telephone No. (510) 987-8000
4 | Facsimile No. (510) 987-8001
E-mail: jat@tiemlaw.com
5 |
Attorney for Debtor-Appellee,
6 | CONNECTIX CORPORATION

**RECEIVED**
Harold S. Marenus, Clerk
U. S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

JUN 1 1 2007

FILED_____
DOCKETED  6-11-07  _____
DATE      INITIAL

7

8 | UNITED STATES BANKRUPTCY COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN JOSE DIVISION

**C 07   3192**

11 | In re                                    Case No.:   05-55648-MM7

12 | CONNECTIX CORPORATION,                   BAP No.:

13 |                  Debtor.                 Chapter 7 Case

14 |                                          APPELLEE'S STATEMENT OF ELECTION
                                             TO TRANSFER APPEAL TO THE
15 |                                          DISTRICT COURT
                                             (28 U.S.C. §158(c)(1))
16 |

17 |          COMES NOW, CONNECTIX CORPORATION, debtor-appellee, in the above-

18 | captioned matter, and files this Statement of Election to Transfer Appeal to the District Court

19 | pursuant to Bankruptcy Rule 8001(e) and Rule 8001(e)-1(a) of the rules of the United States

20 | Bankruptcy Appellate Panel of the Ninth Circuit.

21 |          This appeal is related to District Court Case No. C-06-3163 JSW.

22 | Date:  June 7, 2007

23 |                                          LAW OFFICES OF JAMES A. TIEMSTRA

24 |
25 |                                          By_____
                                             JAMES A. TIEMSTRA, ESQ.
26 |                                          Attorneys for Debtor-Appellee
                                             CONNECTIX CORPORATION
27 |

28 |

CNCO.031                    -1-               STATEMENT OF ELECTION

1  JAMES A. TIEMSTRA (Bar No. 96203)
   LAW OFFICES OF JAMES A. TIEMSTRA
2  Tribune Tower
   409 Thirteenth Street, 15th Floor
3  Oakland, CA 94612
   Telephone No.: (510) 987-8000
4  Facsimile No.: (510) 987-8001
   E-mail: jat@tiemlaw.com
5
   Attorneys for Debtor-Appellee
6  CONNECTIX CORPORATION

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   SAN JOSE DIVISION

11  In re                          Case No.:    05-55648-MM7

12  CONNECTIX CORPORATION,         BAP No.:

13         Debtor.                 Chapter 7 case

14                                 PROOF OF SERVICE FOR APPELLEE'S
                                   STATEMENT OF ELECTION TO
15                                 TRANSFER THE APPEAL TO THE
                                   DISTRICT COURT
16

17

18

19

20

21

22

23

24

25

26

                            – 1 –

## PROOF OF SERVICE BY MAIL

*Connectix Corporation*; Bankruptcy Case No. 05-55648-MM7

I, Susan M. LeBlanc, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is Tribune Tower, 409 Thirteenth Street, 15th Floor, Oakland, CA 94612-2605.

On June 7, 2007, I served the APPELLEE'S STATEMENT OF ELECTION TO TRANSFER APPEAL TO THE DISTRICT COURT by transmission of the Notice of Electronic Filing by the Clerk on the following CM/ECF participants:

CHAPTER 7 TRUSTEE:
Carol Wu
cwu1@sbcglobal.net, ca86@ecfcbis.com

ATTORNEYS FOR CHAPTER 7
TRUSTEE CAROL WU:
Reidun Stromsheim
rstromsheim@stromsheim.com

U.S. TRUSTEE:
USTPRegion17.SJ.ECF@usdoj.gov

ATTORNEYS FOR APPELLANT EOP-
PENINSULA OFFICE PARK:
Michael S. Greger, Esq.
mgreger@allenmatkins.com,
krodriguez@allenmatkins.com

and on the following party, who is not a registered CM/ECF participant, by placing a true and correct copy in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakland, California, addressed as set forth below:

REQUEST FOR SPECIAL NOTICE:
Time Warner Telecom, Inc.
c/o Linda Boyle
10475 Park Meadows Drive, #400
Littleton, CO 80124

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 7, 2007, at Oakland, California.

_____
Susan M. LeBlanc

– 2 –

PROOF OF SERVICE FOR APPELLEE'S
STATEMENT OF ELECTION TO DISTRICT COURT

1  MICHAEL S. GREGER (BAR NO. 156525)
   A. KENNETH HENNESAY, JR. (BAR NO. 187531)
2  ALLEN MATKINS LECK GAMBLE & MALLORY LLP
   1900 Main Street, Fifth Floor
3  Irvine, California 92614-7321
   Phone:  (949) 553-1313
4  Fax:  (949) 553-8354
   E-Mail:  mgreger@allenmatkins.com
5  E-Mail:  khennesay@allenmatkins.com

6  Attorneys for Creditor
   EOP-PENINSULA OFFICE PARK, L.L.C.

7

8              UNITED STATES BANKRUPTCY COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11  In re                              Case No. 05-55648-MM7

12  CONNECTIX CORPORATION,             Chapter 7

13          Debtor.                    **NOTICE OF APPEAL RE OPINION AND
                                       ORDER ON OBJECTION TO CLAIM**
14
                                       Date:    December 8, 2006
15                                     Time:    11:00 a.m.
                                       Ctrm:    3070
16

17

18        Pursuant to 28 U.S.C. § 158(a) and Rule 8001 of the Federal Rules of Bankruptcy

19  Procedure, creditor EOP-PENINSULA OFFICE PARK, L.L.C. ("EOP") hereby appeals from the

20  Opinion and Order on Objection to Claim entered May 10, 2007 (the "Order") by the United

21  States Bankruptcy Court for the San Jose Division of the Northern District of California.  A true

22  and copy of the Order is attached hereto as Exhibit "A".

23  //

24  //

25  //

26  //

27

28

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

811909.01/OC

NOTICE OF APPEAL OF OPINION AND ORDER ON OBJECTION TO CLAIM

R E C E I V E D
Harold S. Marenus, Clerk
U.S. BKCY.APP.PANEL
OF THE NINTH CIRCUIT

MAY 2 3 2007

FILED _____
DOCKETED _____
      DATE      INITIAL

E-filing

C 07 3192

RMW

1    The names of all parties to the Order appealed from and the names, addresses, and

2   telephone numbers of their respective attorneys are as follows:

| INTERESTED PARTY | COUNSEL REPRESENTING INTERESTED PARTY |
|---|---|
| Creditor / Appellant, <br> EOP-Peninsula Office Park, L.L.C. | Michael S. Greger, Esq. <br> A. Kenneth Hennesay, Jr., Esq. <br> Allen Matkins Leck Gamble <br> Mallory & Natsis LLP <br> 1900 Main Street, Fifth Floor <br> Irvine, CA  92614-7321 <br> Telephone:  (949) 553-1313 |
| Debtor / Appellee, <br> Connectix Corporation | James A. Tiemstra, Esq. <br> Law Offices of James A. Tiemstra <br> Tribune Tower <br> 409 Thirteenth Street, 15th Floor <br> Oakland, CA  94612-2605 <br> Telephone:  (510) 987-8000 |
| Trustee / Appellee, <br> Carol Wu | Reidum Stromsheim, Esq. <br> Linda Sorensen, Esq. <br> Stromsheim and Associates <br> 353 Sacramento Street #860 <br> San Francisco, CA  94111 <br> Telephone:  (415) 989-4100 |
| Insiders / Appellees, <br> Bonnie Fought, Jonathan F. Garber and <br> Roy K. McDonald | Jess B. Millikan, Esq. <br> Bullivant Houser Bailey PC <br> 601 California Street, Suite 1800 <br> San Francisco, CA  94108 <br> Telephone:  (415) 352-2700 <br><br> and <br><br> Richard G. Birinyi, Esq. <br> Bullivant Houser Bailey PC <br> 1601 5th Avenue, Suite 2300 <br> Seattle, WA  98101-1618 <br> Telephone:  (206) 292-8930 |

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

811909.01/OC

-2-

NOTICE OF APPEAL OF OPINION AND ORDER ON OBJECTION TO CLAIM

1    If a Bankruptcy Appellate Panel Service is authorized to hear this appeal, each party

2  has a right to have the appeal heard by the district court.  The appellant may exercise this

3  right only by filing a separate statement of election at the time of the filing of this Notice of

4  Appeal.  Appellant has not elected to have its appeal heard by the district court.  Any other

5  party may elect, within the time provided in 28 U.S.C. § 158(c) to have the appeal heard by

6  the district court.

7

8  Dated:  May 17, 2007                          ALLEN MATKINS LECK GAMBLE
                                                 MALLORY & NATSIS LLP
9

10                                               By: /s/ Michael S. Greger
11                                                   MICHAEL S. GREGER
                                                     Attorneys for Creditor/Appellant
12                                                   EOP-PENINSULA OFFICE PARK, L.L.C.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA         )
                              )   ss.:

COUNTY OF ORANGE          )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 1900 Main Street, Fifth Floor, Irvine, California 92614-7321.

On May 17, 2007, I served on interested parties in said action the within:

**NOTICE OF APPEAL RE OPINION AND ORDER ON OBJECTION TO CLAIM**

by placing a true copy thereof in sealed envelope(s) addressed as stated on the attached mailing list and causing such envelope(s) to be deposited in the U.S. Mail at Irvine, California.

I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on May 17, 2007, at Irvine, California.

| Kim Rodriguez | /s/ Kim Rodriguez |
|---|---|
| (Type or print name) | (Signature) |

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

811909.01/OC

NOTICE OF APPEAL OF OPINION AND ORDER ON OBJECTION TO CLAIM

1  In re Connectix Corporation
   USBC Case No. 05-55648-MM7

2

3  **MAILING LIST**

4

5  **Debtor's Counsel**
   James A. Tiemstra, Esq.
   Law Offices of James A. Tiemstra
6  409 Thirteenth Street, 15th Floor
   Oakland, CA  94612-2605

7

8  **Insiders' Counsel**
   Jess B. Millikan, Esq.
9  Bullivant Houser Bailey PC
   601 California Street, Suite 1800
10 San Francisco, CA  94108

11
   Richard G. Birinyi, Esq.
12 Bullivant Houser Bailey PC
   1601 Fifth Avenue, Suite 2300
13 Seattle, WA  98101-1618

14 **Chapter 7 Trustee**
   Carol Wu, Esq.
15 25A Crescent Drive #413
   Pleasant Hill, CA  94523
16

17 **Chapter 7 Trustee's Counsel**
   Reidun Stromsheim, Esq.
18 Linda Sorensen, Esq.
   Stromsheim and Associates
19 353 Sacramento Street, Suite 860
   San Francisco, CA  94111

20

21

22

23

24

25

26

27

28

Allen Matkins Leck
Gamble & Mallory LLP
attorneys at law

811909.01/OC

NOTICE OF APPEAL OF OPINION AND ORDER ON OBJECTION TO CLAIM

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

**FILED**

In re

Connectix Corporation, a California corporation

Case no. 05-55648 -MM

_____ Debtor(s) /

Chapter 7

MAY 2 1 2007

United States Bankruptcy Court
San Jose, California
CLERK BY

C 07   3192 RMW

### NOTICE OF REFERRAL OF APPEAL TO BANKRUPTCY APPELLATE PANEL

TO ALL PARTIES:

YOU AND EACH OF YOU are hereby notified that the enclosed notice of appeal has been filed by EOP-Peninsula

Office Park, L.L.C. with the Clerk of the Bankruptcy Court. By virtue of the orders of the Judicial Council of the Ninth

Circuit and the District Court for this district, the above appeal has been referred to the United States Bankruptcy

Appellate Panel of the Ninth Circuit (BAP).

Dated: May 21, 2007

GLORIA L. FRANKLIN, Clerk
United States Bankruptcy Court

By:_____
Deputy Clerk

Re: 05-55648 -MM (7)

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

<u>CERTIFICATE OF MAILING</u>

I, the undersigned, a regularly appointed and qualified clerk in the office of the Northern District of California, San Jose, California, hereby certify:

**NOTICE OF REFERRAL OF APPEAL TO BANKRUPTCY APPELLATE PANEL**

That I, in the performance of my duties as such Clerk, served a copy of the foregoing document by depositing it in the regular United States mail at San Jose, California on the date shown below, in a sealed envelope bearing the lawful frank of the United States Bankruptcy Court addressed as listed below.

Michael S. Greger, Esq.
A. Kenneth Hennesay, Jr., Esq.
Allen Matkins Leck Gamble
Mallory & Natsis LLP
1900 Main Street, Fifth Floor
Irvine, CA 92614-7321

James A. Tiemstra, Esq.
Law Offices of James A. Tiemstra
Tribune Tower
409 Thirteenth Street, 15th Floor
Oakland, CA 94612-2605

Reidum Stomsheim, Esq.
Linda Sorensen, Esq.
Stromsheim and Associats
353 Sacramento Street #860
San Francisco, CA 94111

Jess B. Millikan, Esq.
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, CA 94108

Richard G. Birinyi, Esq.
Bullivant Houser Bailey PC
1601 5th Avenue, Suite 2300
Seattle, WA 98101-1618

Clerk of the Bankruptcy Appellate Panel
Attn: Edwina Clay
125 South Grand Avenue
Pasadena, CA 91105

Office of the U.S. Trustee/SJ
U.S. Fedearl Bldg.
280 S. 1st St., #268
San Jose, CA 95113-3004

1

Certificate of Mailing.wpt

1

2

3

Dated:  May 21, 2007

4

Erica Rendler,  Deputy Clerk

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

2

Certificate of Mailing.wpt

May 10, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed May 10, 2007

*Marilyn Morgan*

Marilyn Morgan
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CONNECTIX CORPORATION,<br><br>Debtor. | Case No.  05-55648 MM<br><br>Chapter 7<br><br>**OPINION AND ORDER ON<br>OBJECTION TO CLAIM** |

### INTRODUCTION

Carol Wu, the Chapter 7 Trustee, has objected to a claim in the amount of $2,335,283.99 that EOP-Peninsula Office Park, the debtor's former landlord, filed against the estate of Connectix Corporation.  The Trustee asserts that the correct application of § 502(b)(6) of the Bankruptcy Code limits EOP's recovery to $446,246.99. The debtor and its three major shareholders join in the Trustee's objection. After hearing arguments of counsel and reviewing the parties' submissions, the court sustains the Trustee's objection for the reasons explained below.

### FACTUAL BACKGROUND

Beginning in May 1998, Connectix leased certain business premises from EOP pursuant to a twelve-year commercial lease.  Under section 4 of the lease, which is entitled "Security Deposit," Connectix had to provide EOP with a $50,000 security deposit in the form of cash or a letter of credit.

1

OPINION AND ORDER

EXHIBIT A PAGE 4

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1   Section 4 also required Connectix to deliver an additional "Letter of Credit, pursuant to the provisions

2   contained in Section 36." Section 36, in turn, provided that the requisite letter of credit would, initially,

3   be in the amount of $2,111,205, subject to specified reductions beginning in year five. EOP was entitled

4   to draw the entire amount of the additional letter of credit upon any event of default, but any amount

5   drawn was to be held "as a security deposit, subject to the terms of Section 4." Any unused security

6   deposit was to be returned to Connectix at the expiration or termination of the lease. Connectix

7   maintained a certificate of deposit in an amount that matched the letter of credit at the same bank that

8   issued the letter of credit.

9       By 2003, Connectix had fallen on hard times, and the company began to liquidate assets and

10  wind up its affairs. In January of that year, Connectix sold substantially all of its assets to Microsoft

11  Corporation. After the proceeds of the sale were released from escrow, the Connectix board of directors

12  approved distributions, involving several million dollars, to its three shareholders. On September 1,

13  2003, Connectix did not pay the September rent due under to its lease with EOP. Connectix surrendered

14  the premises to EOP on or about September 23, 2003, and the lease was terminated. Due to the lease

15  rejection, EOP claims to have incurred substantive damages exceeding $14 million.

16      In January and February 2004, EOP made two draws on the standby letter of credit that

17  Connectix had provided pursuant to section 36 of the lease. EOP applied the draws, totaling $1,648,782,

18  against its damage claim. Over the next year, Connectix attempted to negotiate a resolution of its

19  dispute with EOP regarding EOP's lease rejection claim. Then, in January 2005, EOP filed a state court

20  action based both on breach of lease and on fraudulent conveyance related to the 2003 distributions that

21  Connectix made to its shareholders. Although the parties agreed to mediate their dispute and a mediator

22  was selected, EOP asked for the mediation to be postponed. Shortly thereafter, Connectix filed its

23  chapter 7 petition on September 9, 2005.

24      EOP has filed a proof of claim against the estate in the amount of $2,335,283.99. It consists of

25  two components. First, EOP claims $161,588.52 in unpaid rent and other charges that became due

26  before EOP recovered the premises in September 2003. This amount is undisputed. The vast majority

27  of EOP's claim, however, is related to the $2,173,695.47 that EOP asserts as its capped claim for future

28  rent reserved under § 502(b)(6)(A) of the Bankruptcy Code.

2

OPINION AND ORDER

1   To calculate the rent reserved portion of its claim, EOP multiplied the dollar amount of all rent

2   that would have become due under the lease from the termination date of September 23, 2003 through

3   the end of the lease's natural term by fifteen percent, resulting in the sum of $2,173,695.47 for future

4   rent. It then added that amount to the $161,588.52 unpaid rent component to arrive at its total claim of

5   $2,335,283.99. EOP did not deduct for the draws on the letter of credit, asserting that the pre-petition

6   draws only reduced its substantive damages, not the capped claim. The Trustee asserts that EOP's

7   capped claim for rent reserved under § 502(b)(6)(A) should be determined by first calculating fifteen

8   percent of the remaining months under the lease following surrender. Then, the future rent claim is

9   equal to the rent that would have become due in that number of months immediately following

10  Connectix's surrender of the premises. Those calculations produce a future rent component in the

11  amount of $1,933,440.47. After adding in the undisputed unpaid rent component, the total capped

12  claim, according to the Trustee, is $2,095,028.99. From that sum, the Trustee subtracts the draws on

13  the letter of credit to arrive at an allowable claim of $446,246.99.

14

15  ### LEGAL DISCUSSION

16  **I.    Ambiguities in § 502(b)(6) Warrant Recourse to the Legislative History to Determine
         Legislative Intent.**

17

18  When an objection is filed to a lessor's claim for damages resulting from the termination of a

19  real property lease, § 502(b)(6) of the Bankruptcy Code restricts the amount of the claim that is

20  allowable in bankruptcy. It provides that the court shall not allow the landlord's claim to the extent that

21  the claim exceeds:

22  (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of–

23  (i) the date of the filing of the petition; and
24  (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

25  (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

26  11 U.S.C. § 502(b)(6). The parties, here, dispute whether the term "15 percent" in subsection (A) refers

27  to fifteen percent of the time remaining on the lease from the date of surrender; or, fifteen percent of the

28  total rent that would have become due after the date of surrender. They also disagree as to whether

3

OPINION AND ORDER

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1  EOP's post-surrender, but pre-petition, draws on the letter of credit that Connectix provided pursuant

2  to section 36 of the lease should be deducted from EOP's allowable claim under § 502(b)(6) or whether

3  the draws simply reduce the total amount of EOP's substantive damages.

4       That the answers to these questions are not easily ascertainable is apparent from the equal

5  division in the authority on both issues. A number of courts have concluded that the phrase "15 percent"

6  refers to fifteen percent of the total rent due under the remainder of the lease. *See e.g., In re New Valley

7  Corp.*, 2000 WL1251858, at *11-12 (D.N.J. 2000); *In re Andover Togs, Inc.*, 231 B.R. 521, 545-46

8  (Bankr. S.D.N.Y. 1999); *In re Today's Woman of Florida, Inc.*, 195 B.R. 506, 507-08 (Bankr. M.D. Fla.

9  1996); *In re Gantos, Inc.*, 176 B.R. 793, 795-96 (Bankr. W.D. Mich. 1995); *In re Financial News

10  Network, Inc*, 149 B.R. 348, 351 (Bankr. S.D.N.Y. 1993); *In re Communicall Central, Inc.*, 106 B.R.

11  540, 544 (Bankr. N.D. Ill. 1989). This "total rent" approach is sometimes referred to as the "majority"

12  view, but research reveals that a similar number of courts interpret the phrase as a function of the total

13  time remaining on the lease. *See e.g., In re Blatstein*, 1997 WL 560119, at *15-16 (E.D. Pa. 1997); *In

14  re Allegheny International, Inc.*, 136 B.R. 396, 402-03 (Bankr. W.D. Pa. 1991), *aff'd*, 145 B.R. 823,

15  827-28 (W.D. Pa. 1992); *In re Ace Electrical Acquisition, LLC*, 342 B.R. 831, 833 (Bankr. M.D. Fla.

16  2005); *In re Peters*, 2004 WL 1291125, at *6, n.20 (Bankr. E.D. Pa. 2004); *In re Iron-Oak Supply Corp.*,

17  169 B.R. 414, 419-20 (Bankr. E.D. Cal. 1994); *In re Bob's Sea Ray Boats, Inc.*, 143 B.R. 229, 231

18  (Bankr. D.N.D. 1992). The commentators are also divided. *Compare* Norton Bankruptcy Law and

19  Practice 2d, vol. 2, § 41.24 (2006)(adopting the rent approach without discussion) *with* 4 Collier on

20  Bankruptcy (15th rev. ed.) at ¶ 502.03[7][c] (noting that § 502(b)(6) speaks in terms of time and that the

21  apparent "majority's" use of the rent approach is not in accord with the language of the statute). With

22  respect to the correct application of the letter of credit, the text of § 502(b)(6) is silent on how to apply

23  payments from pre-petition draws against a letter of credit that is serving as a security deposit for a

24  lease. Research discloses that only two reported decisions have considered pre-petition draws on a letter

25  of credit, and the decisions reached contrary results. *Compare In re PPI Enterprises, Inc.*, 324 F.3d 197,

26  208 (3rd Cir. 2003)(letter of credit draw following tenant's premature termination of lease), *with In re

27  Condor Systems, Inc.*, 296 B.R. 5, 13-15 (9th Cir. B.A.P. 2003)(letter of credit draw following

28  employer's premature termination of employment contract).

4

OPINION AND ORDER

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1    The even split in authority strongly indicates that the text of § 502(b)(6) is less than plain with

2    respect to either of the issues before this court. When statutory ambiguity exists, the legislative intent

3    and history behind the statute may be consulted. *Toibb v. Radloff,* 501 U.S. 157,162, 111 S. Ct. 2197,

4    2200 (1991); *Blum v. Stenson,* 465 U.S. 886, 896, 104 S. Ct. 1541, 1548 (1984); *United States v. Lopez,*

5    __ F.3d __, 2007 WL 1309689, at *16 (2007); *Consejo de Desarrollo Economico de Mexicali, A.C, v.*

6    *United States,* 482 F.3d 1157(9th Cir. 2007). Unlike more recent amendments to the Bankruptcy Code,

7    a wealth of legislative history from 1977 and 1978 provides context and explains Congressional

8    motivations behind § 502(b)(6) and its predecessors.

9    Prior to 1934, a landlord's claim for future rent damages due to premature lease termination was

10    not recognized in bankruptcy because it was considered contingent and not capable of proof. *See*

11    *Oldden v. Tonto Realty Corp.,* 143 F.2d 916, 918 (2d Cir. 1944)(collecting cases). *Oldden* was one of

12    few decisions interpreting the cap on lease rejection damages that was added to the Bankruptcy Act of

13    1898. As explained in *Oldden,* Congress used the 1934 and 1938 amendments to the Bankruptcy Act

14    to overcome obstacles that had previously prevented landlords from proving claims for future rent. At

15    the same time, it placed a ceiling on the measure of a landlord's damages to avoid large and

16    overwhelming claims for unearned rent. *Id.* at 920. The result represented a compromise that enabled

17    landlords to assert some amount as a claim for future rent, but with limited sacrifice on the part of

18    general creditors. *Id.* Following the 1938 amendments, the Bankruptcy Act provided that, in liquidation

19    cases, a landlord's claim would not be allowed in excess of "the year next succeeding" the date of

20    surrender or reentry, which ever occurred first, regardless of whether that date was before or after the

21    petition date. *See* 4 Collier on Bankruptcy at ¶502.LH[3][a]. In rehabilitation cases, the amendments

22    limited claims to "the three years next succeeding" surrender or reentry. *Id.*

23    When Congress drafted the 1978 Bankruptcy Code, it carried forward the limitations on

24    landlords' claims for lease rejection damages from the Bankruptcy Act. The Report of the House

25    Judiciary Committee on the original version of H.R. 8200 specifically referenced *Oldden's* detailed

26    review of the history of the limitation on landlord claims, and then went on to explain that the cap on

27    landlords' damages was "designed to compensate the landlord for his loss while not permitting a claim

28    so large . . . as to prevent other general unsecured creditors from recovering a dividend from the estates.

5

**OPINION AND ORDER**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1    The damages a landlord may assert from termination of a lease are limited to the rent reserved for the

2    greater of one year or 10% of the remaining lease term, not to exceed three years after the earlier of

3    the petition date or the date of surrender or repossession. H.R. Rep. No. 595, 95th Cong., 1st Sess. 353

4    (1977), *reprinted in* Collier on Bankruptcy, vol. C, App. Pt. 4(d)(i). The House Judiciary Report also

5    noted that the new ten percent formula replaced the Act's dual provisions allowing recovery of three

6    years' rent in reorganization cases and one year in liquidation cases. The House Judiciary Report further

7    observed that the provision capping landlords' lease rejection damages did not

8           overrule *Oldden*, or the proposition for which it has been read to stand: to the extent that
           a landlord has a security deposit in excess of the amount of his claim allowed under this
9           paragraph, the excess comes into the estate. . . . As under *Oldden*, he will not be
           permitted to offset his actual damages against his security deposit and then claim for the
10          balance under this paragraph. Rather, his security deposit will be applied in satisfaction
           of the claim that is allowed under this paragraph.
11

12   *Id.* These comments accompanied H.R. 8200 when it went to the Senate for consideration.

13       The Senate's amended version of the 1978 bankruptcy bill, for the most part, accepted the

14   House's version of the limitation on landlords' lease rejection damages, but it retained the Bankruptcy

15   Act's one year/three year distinction between liquidation and rehabilitation cases. S. Rep. No. 989, 95th

16   Conf., 2d Sess. 63 (1978), *reprinted in* Collier on Bankruptcy, vol. D, App. Pt. 4(e)(i). Eventually, a

17   compromise was reached. Introducing the compromise bill, Congressman Don Edwards noted that the

18   modified version of H.R. 8200 contained the House's original cap on landlords' lease rejection damages

19   but increased the percentage calculation from ten to fifteen percent. Explaining the decision to retain

20   the Bankruptcy Act's limit on landlord's damages, Congressman Edwards commented that, historically,

21   it was "considered equitable to limit the claims of real estate lessor[s]." 124 Cong. Rec. H11,094 (daily

22   ed. Sept. 28 1978), *reprinted in*, Colliers, Vol. D, at App. Pt. 4(f)(i)(comments of Congressman

23   Edwards). He observed that two considerations led to that belief. First, as a matter of history, damages

24   upon breach of a real estate lease were viewed as contingent and difficult to prove. Second, in leasing

25   transactions, "the lessor retains all risks and benefits as to the value of the real estate at the termination

26   of the lease." *Id.* In other words, the lessor re-takes full possession of the property once the lease is

27   terminated. Both the House and the Senate enacted H.R. 8200 as modified and it appears today as

28   § 502(b)(6) of the Bankruptcy Code.

OPINION AND ORDER

EXHIBIT *A* PAGE 9

1

2    **II.    Under § 502(b)(6)(A), the Amount of the Landlord's Capped Claim is Calculated Using the
3    Next Succeeding 15% of the Time Remaining through the Natural End of the Lease.**

4             Based on the language and the legislative history of § 502(b)(6), it is apparent that the fifteen

5    percent calculation is a function of time, not the remaining rent due under the lease.  This conclusion

6    is in keeping with the most ordinary reading of the statute.  Absent the qualifier setting a maximum

7    term, the statute states that the court must look to fifteen percent of "the remaining term of such lease."

8    Common use of the phrase "the term of a lease," refers to the length of a lease based on a measure of

9    time, not an amount of rent.  Thus, the statutory directive to calculate fifteen percent of the remaining

10   *term* most naturally requires a calculation of time.  Other references to time in § 502(b)(6)(A) bolster

11   this temporal interpretation.  First, the section instructs that the fifteen percent calculation must be based

12   on the remaining term that *follows,* or comes after, the earlier of two dates.  Additionally, the section

13   sets both a minimum and a maximum period of *time* for which a claim of future rent will be allowed.

14   At a minimum, a landlord will be allowed a claim for the rent that would have come due during the first

15   year following the applicable trigger date, and, at a maximum, the rent that would have come due during

16   the three years immediately following the applicable trigger date.  Finally, the statutory mandate to

17   compute rent reserved "without acceleration" further confirms that fifteen percent calculation is a

18   function of time.   If rent reserved were computed based on rent that would have come due under the

19   remainder of the lease, then the calculation necessarily would "accelerate" and take into account future

     rent increases that had not yet occurred.

20            The legislative history also indicates that the fifteen percent calculation is an operation of time.

21   As noted above, the percentage calculation was intended to replace the dual time provisions employed

22   in the Bankruptcy Act.  There is no indication, however, that Congress intended to move away from

23   calculating the cap based on the rent that would become due within a time period immediately

24   succeeding the statutory trigger date.  Because there is no clear expression of an intent to change from

25   a time approach to a "total rent" based formula, it cannot be presumed that Congress intended to make

26   that shift.  *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227, 77 S. Ct. 787, 791

27   (1957)("no changes in law or policy are to be presumed from changes of language in the revision unless

28

7

**OPINION AND ORDER**

EXHIBIT _A_ PAGE _10_

1  an intent to make such changes is clearly expressed."). Further, the House Judiciary Report explaining

2  the then ten percent calculation confirms that it is a computation of time. It stated that "[t]he damages

3  a landlord may assert from termination of a lease are limited to the rent reserved for the greater of one

4  year or *10% of the remaining lease term,* not to exceed three years *after* the earlier of" the petition date

5  or the date of surrender or repossession. H.R. Rep. No. 595, 95th Cong., 1st Sess. 353 (1977), *reprinted*

6  *in* Collier on Bankruptcy (15th Rev. Ed.), vol. C, App. Pt. 4(d)(i) (emphasis added).

7       The time approach also better serves the economic forces that Congress was trying to address

8  when it enacted the landlord damage cap. Some courts have reasoned that the rent approach more

9  closely approximates a landlord's expectation damages by allowing the landlord to take advantage of

10  bargained for rent increases. *See e.g., Gantos,* 176 B.R. at 795-96. However, neither the statute nor

11  the legislative history suggest that Congress intended to approximate landlords' expectation damages.

12  To the contrary, the statute speaks in terms of rent due, "without acceleration." Further, Congressman

13  Edwards specifically identified the economic considerations that led to the enactment of § 502(b)(6).

14  Although Congress wanted to continue the Bankruptcy Act's decision to give landlords some claim for

15  future rent in bankruptcy, it also recognized the historical belief that it was equitable to limit the claims

16  of landlords. The legislative history indicates that Congress started from the premise that, historically,

17  landlords had no claim at all. It was also influenced by the fact that landlords, unlike other general

18  unsecured creditors, have added protection at the termination of a lease arrangement. Landlords get the

19  property back. As one court concluded, § 502(b)(6) provides landlords with a certain period of time to

20  relet their property. If successful, the landlord suffers no real economic detriment, because reletting the

21  premises restores the landlord to the position it was in prior to lease termination. *See In re Allegheny*

22  *International, Inc.* 136 B.R. at 402, *aff'd,* 145 B.R. 823 (W.D. Pa. 1992).

23       Because the parties agree that Connectix surrendered the leased premises on or about September

24  23, 2003, nearly two years prior to the petition date, the surrender date is the operative date for

25  determining the amount of EOP's allowable claim under § 502(b)(6). For the reasons explained, EOP's

26  allowable claim for future rent is equal to the rent that would have become due during fifteen percent

27  of the months remaining under the lease immediately following surrender. The resulting number must

28  then be added to EOP's claim for past due rent under § 502(b)(6)(B). According to the Trustee's

OPINION AND ORDER

EXHIBIT _A_ PAGE _11_

1    calculations, which are based on the time approach and are not disputed mathematically, this results in

2    a claim for future rent of $1,933,440.47.  After adding in the undisputed amount of $161,588.52

3    attributable to unpaid past due rent, EOP's total capped claim under § 502(b)(6) is $2,095,028.99.  The

4    remaining question is whether the $1,648,782 that EOP has already received from draws on the letter

5    of credit should further reduce that claim.

6

7    **III.    Under § 502(b)(6), Pre-petition Draws on a Letter of Credit Serving as a Security Deposit**

8    **Will Reduce the Landlord's Allowable Claim in Bankruptcy.**

9    As the Ninth Circuit has recognized, § 502(b)(6) provides no explicit guidance as to whether

10   security deposit proceeds should be applied to a landlord's gross damages or its allowed claim and,

11   therefore, the statute is ambiguous.  *In re AB Liquidating Corp. (AMB Property, L.P. v. Official*

12   *Creditors Comm.)*, 416 F.3d 961, 964 (9th Cir. 2005).  As a result, the court looked to the legislative

13   history and its "explicit endorsement of *Oldden*" for assistance.  *Id.*  The House Judiciary Report on

14   H.R. 8200 expressly refers to the *Oldden* case, a case under the Bankruptcy Act that concludes that

15   security deposits should be applied against the landlord's capped claim rather than its total damages.

16   *Oldden*, 143 F.2d at 920-21.  The House Judiciary Report states that the proposed cap on a landlord's

17   lease rejection damages was not intended to overrule or change the outcome of *Oldden*.  It explained

18   that "under *Oldden*, [a landlord] will not be permitted to offset his actual damages against his security

19   deposit and then claim for the balance under [§ 502(b)(6)].  Rather, his security deposit will be applied

20   in satisfaction of the claim that is allowed under [§ 502(b)(6)]."  In light of this congressional

21   endorsement, the Ninth Circuit refused to reject *Oldden's* holding and concluded that under the facts

22   before it, namely, post-petition draws on a letter of credit security deposit, the letter of credit proceeds

23   received by the landlord were properly subtracted from the landlord's allowed claim.  *AB Liquidating*,

24   416 F.3d at 965.  Relying on that same legislative history, the Third Circuit has held that proceeds

25   received from post-surrender but pre-petition draws on a letter of credit security deposit also reduce a

26   landlord's allowed claim.  *In re PPI Enterprises (U.S.), Inc. (Solow v. PPI Enterprises (U.S.), Inc.)*, 324

27   F.3d 197 (3d Cir. 2003).  In *PPI*, as in the instant case, the debtor surrendered its lease several years

28   prior to the date of its bankruptcy petition.  In the interim, PPI's landlord, like EOP here, drew down

OPINION AND ORDER

EXHIBIT _A_ PAGE _12_

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1    the letter of credit that PPI had provided as a security deposit. The Third Circuit reasoned that under

2    § 502(b)(6), the amount of the landlord's allowable claim must be calculated as of the date the lease was

3    surrendered. Therefore, any proceeds received following surrender should be applied against the capped

4    claim. I agree with the Third Circuit and conclude that, under the facts of this case, EOP's post-

5    surrender, but pre-petition draws on the letter of credit security deposit provided by Connectix are to

6    be applied against EOP's allowable claim in bankruptcy.

7       EOP's reliance on *In re Condor Systems, Inc.*, 296 B.R. 5 (9th Cir. B.A.P.), does not persuade

8    me otherwise. In *Condor*, the Bankruptcy Appellate Panel for the Ninth Circuit considered whether

9    pre-petition severance payments reduce the one-year cap on claims by terminated employees set forth

10    in § 502(b)(7), and further whether a stream of pre- and post- petition severance payments under a letter

11    of credit reduce that same cap. *Condor*, 296 B.R. at 10. Because the appellate panel answered "no" to

12    both questions, some might try to extend *Condor*'s holding to find that pre-petition draws on letter of

13    credit security deposits under § 502(b)(6) should not be applied against the allowed amount of a

14    landlord's claim. But the court in *Condor* discouraged any such extension of its reasoning. In

15    considering the letter of credit issue, the appellate panel noted the similarity in the language between

16    § 502(b)(6) and § 502(b)(7), but took care to explain that letters of credit serving as security deposits

17    on real property leases are unique creatures with an extensive history that differentiates them from

18    letters of credit established to secure payment of employment termination damages. *Id.* at 18-19. In

19    light of that distinction, the court concluded that the treatment of security deposits under § 502(b)(6)

20    simply did not apply to the employment termination case before it. *Id.*

21       Others might try to extend *Condor*'s discussion of the word "unpaid" in § 502(b)(7) to

22    § 502(b)(6) security deposit cases. In *Condor*, the court reasoned that certain pre-petition severance

23    payments did not apply against an employee's capped claim based on the appearance of the word

24    "unpaid" in § 502(b)(7)(B), but not in § 502(b)(7)(A). I do not find *Condor*'s reasoning persuasive in

25    the case before me. It is true that the word "unpaid" appears in § 502(b)(6)(B), which deals with unpaid

26    past due rent, but does not appear in § 502(b)(6)(A), which controls the calculation of future rent

27    reserved. However, in the § 502(b)(6) context, future rent reserved is, by definition, unpaid at the time

28

10

**OPINION AND ORDER**

1    of the calculation of the cap. There simply was no need for Congress to include the word "unpaid" in

2    § 502(b)(6)(A).

3        In fact, *Condor's* discussion of security deposit letters of credit reinforces the conclusion that

4    EOP's post-surrender, but pre-petition draws on the letter of credit security deposit provided by

5    Connectix are to be applied against EOP's allowable claim in bankruptcy. According to *Condor*, when

6    a letter of credit secures payment of a real property lease, the key question is whether it is intended to

7    be a security deposit such that any draw against the letter of credit will have an impact on property of

8    the estate. *Id.* at 19. *Accord In re Mayan Networks Corp.*, 306 B.R. 295, 306 (9th Cir. B.A.P.

9    2004)(Klein, J., concurring). Here, the letter of credit at issue was clearly intended to be a security

10    deposit. The lease first mentions the letter of credit in a paragraph entitled "Security Deposit." Further,

11    the lease explicitly states that any draws on the letter of credit are to be treated as additional security

12    deposit. Finally, counsel for Connectix verified at the hearing that Connectix had established a

13    certificate of deposit in the same amount as the letter of credit at the same bank that issued the letter of

14    credit. Under similar facts, both the appellate panel and the Ninth Circuit have concluded that a letter

15    of credit was intended to be and should be treated as a security deposit because draws against the letter

16    of credit would have an effect on property in the debtor's estate. *See AB Liquidating*, 416 F.3d at 965;

17    and, *Mayan Networks*, 306 B.R. at 301.

18        For the reasons explained, the $1,648,782 that EOP took in pre-petition draws on the letter of

19    credit security deposit from Connectix is to be applied against its capped claim of $2,095,028.99,

20    leaving an allowable claim of $446,246.99.

21

22                       <u>CONCLUSION</u>

23        The Chapter 7 Trustee's objection to the claim of EOP-Peninsula Office Park is sustained and

24    EOP-Peninsula Office Park's claim is allowed in the reduced amount of $446,246.99.

25

26        Good cause appearing, IT IS SO ORDERED.

27

28                 * * * * END OF ORDER * * * *

**OPINION AND ORDER**

EXHIBIT _A_ PAGE _14_

1  Case No. 05-55648

2

3

4                            **COURT SERVICE LIST**

5

6   Reidun Stromsheim                    Michael S. Greger
    Linda Sorensen                       A. Kenneth Hennesay, Jr.
7   STROMSHEIM & ASSOCIATES              ALLEN MATKINS LECK GAMBLE &
    353 Sacramento Street, Suite 860     MALLORY LLP
8   San Francisco, CA 94111              1900 Main Street, 5th Floor
                                         Irvine, CA 92614-7321
9   Richard G. Birinyi
    BULLIVANT HOUSER BAILEY              Jess B. Millikan
10  1601 5th Avenue, Suite 2300          BULLIVANT HOUSER BAILEY
    Seattle, WA 98101-1618               601 California Street, Suite 1800
11                                       San Francisco, CA 94108
    James A. Tiemstra
12  LAW OFFICES OF JAMES A. TIEMSTRA
    409 Thirteenth Street, 15th Floor
13  Oakland, CA 94612-2605

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

                            12

OPINION AND ORDER

EXHIBIT _A_ PAGE _15_

PreAct, APPEAL

# U.S. Bankruptcy Court
## Northern District of California (San Jose)
### Bankruptcy Petition #: 05-55648
#### Internal Use Only

*Assigned to:* Judge Marilyn Morgan          E-filing          *Date Filed:* 09/09/2005
Chapter 7
Voluntary
Asset

C 07   3192 RMW

**Debtor**                                    represented by **James A. Tiemstra**
**Connectix Corporation,** *a California*     Law Offices of James A.
*corporation*                                 Tiemstra
2680 Bayshore Pkwy. #210                      Tribune Tower
Mountain View, CA 94043                       409 13th St. 15th Fl
Tax id: 94-30172                              Oakland, CA 94612
                                              (510)987-8000
                                              Email: jat@tiemlaw.com

**Trustee**                                   represented by **Carol Wu**
**Carol Wu**                                  25A Crescent Dr. #413
25A Crescent Dr. #413                         Pleasant Hill, CA 94523
Pleasant Hill, CA 94523                       408-404-7039
408-404-7039                                  Email: cwu1@sbcglobal.net

                                              **Elizabeth Murphy**
                                              Law Offices of Stromsheim
                                              and Assoc.
                                              201 California St. #350
                                              San Francisco, CA 94111
                                              (415) 989-4100
                                              Email:
                                              emurphy@stromsheim.com

                                              **Reidun Stromsheim**

Law Offices of Stromsheim
and Assoc.
201 California St. #350
San Francisco, CA 94111
(415)989-4100
Email:
rstromsheim@stromsheim.com

**U.S. Trustee**
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

| Filing Date | # | Docket Text |
|---|---|---|
| 09/09/2005 | 1 | Chapter 7 Voluntary Petition, Fee Amount $209, Filed by Connectix Corporation. Order Meeting of Creditors due by 9/16/2005. (Tiemstra, James) ERROR: INCOMPLETE FILING DEADLINES WERE NOT SET. COURT CORRECTED TO GIVE 15 DAY DEADLINE. Modified on 9/12/2005 (mk, ). (Entered: 09/09/2005) |
| 09/09/2005 | | Receipt of filing fee for Voluntary Petition (Chapter 7)(05-55648) [misc,volp7] ( 209.00). Receipt number 2548426, amount $ 209.00 (U.S. Treasury) (Entered: 09/09/2005) |
| 09/09/2005 | | First Meeting of Creditors with 341(a) meeting to be held on 10/04/2005 at 12:00 PM at San Jose Room 130. Proof of Claim due by 01/02/2006. (Tiemstra, James) (Entered: 09/09/2005) |
| 09/09/2005 | 2 | Creditor Matrix *Cover Sheet* Filed by Debtor Connectix Corporation (Attachments: # 1 Exhibit |

| | | Creditor Mailing Matrix) (Tiemstra, James) (Entered: 09/09/2005) |
|---|---|---|
| 09/09/2005 | ●3 | Disclosure of Compensation of Attorney for Debtor in the Amount of $ 25,000 *per Rule 2016(b)* Filed by Debtor Connectix Corporation (Tiemstra, James) (Entered: 09/09/2005) |
| 09/12/2005 | ●4 | Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) . (mk, ) (Entered: 09/12/2005) |
| 09/12/2005 | ● | Deadlines Updated (RE: related document(s)1 Voluntary Petition (Chapter 7)). Incomplete Filings due by 9/27/2005. (mk, ) (Entered: 09/12/2005) |
| 09/12/2005 | ● | **CORRECTIVE ENTRY** (RE: related document(s)1 Voluntary Petition (Chapter 7), Voluntary Petition (Chapter 7)). (mk, )ERROR: INCOMPLETE FILING DEADLINES WERE NOT SET. COURT CORRECTED TO GIVE 15 DAY DEADLINE. (Entered: 09/12/2005) |
| 09/14/2005 | ●5 | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s)4 Generate 341 Notices). Service Date 09/14/2005. (Admin.) (Entered: 09/14/2005) |
| 09/15/2005 | ●6 | Application to Employ Kokjer, Pierotti, Maiocco & Duck LLP as Accountant Filed by Trustee Carol Wu (Attachments: # 1 Declaration of Proposed Principal Accountant) (Wu, Carol) (Entered: 09/15/2005) |
| 09/15/2005 | ●7 | Application to Employ Stromsheim & Associates as Counsel *by Trustee* Filed by Trustee Carol Wu (Attachments: # 1 Certificate of Service) |

Miscellaneous Relief, ). Filed by Witnesses Bonnie Fought, Jonathan F. Garber, Roy K. McDonald (Blanscett, Joye) (Entered: 02/23/2007)

| 02/23/2007 | ◕141 | Brief/Memorandum in Opposition to *Motion for Order Authorizing EOP-Peninsula Office Park, L.L.C. to File and Prosecute Avoidance Actions and Related Claims on Behalf of the Chapter 7 Bankruptcy Estate and Related Relief* (RE: related document(s)131 Motion Miscellaneous Relief, ). Filed by Debtor Connectix Corporation (Attachments: # 1 Declaration of James A. Tiemstra# 2 Request for Judicial Notice# 3 Exhibit 1# 4 Exhibit 2# 5 Exhibit 3# 6 Exhibit 4# 7 Exhibit 5# 8 Exhibit 6# 9 Certificate of Service) (Tiemstra, James) (Entered: 02/23/2007) |
| --- | --- | --- |
| 03/01/2007 | ◕142 | Adversary case 07-05032. 02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)) Complaint by EOP-Peninsula Office Park, LLC against Roy K. McDonald, Jonathan F. Garber, Bonnie Fought, Alan Mendelson, Frank Levinson. Fee Amount $250. (Attachments: # 1 AP Cover Sheet # 2 Summons to be Issued) (Greger, Michael) (Entered: 03/01/2007) |
| 03/02/2007 | ◕ | Hearing Continued (RE: related document(s)131 Motion for Order Authorizing EOP-Peninsula Office Park, L.L.C. to File and Prosecute Avoidance Actions and Related Claims on Behalf of the Chapter 7 Bankruptcy Estate and Related Relief Filed by Creditor EOP-Peninsula Office Park, LLC (Greger, Michael)). Hearing to be held on 5/11/2007 at 11:00 AM SanJose Courtroom 3070 - Morgan for 131. Continued prior to hearing. (mem, ) (Entered: 03/09/2007) |

| 05/04/2007 | ●143 | Reply to *In Support of Motion for Order Authorizing EOP-Peninsula Office Park, L.L.C. to File and Prosecute Avoidance Actions and Related Claims on Behalf of the Chapter 7 Bankruptcy Estate and Related Relief (including Proof of Service)* (RE: related document(s)131 Motion Miscellaneous Relief, ). Filed by Creditor EOP-Peninsula Office Park, LLC (Greger, Michael) (Entered: 05/04/2007) |
| 05/10/2007 | ●144 | Opinion and Order (RE: related document(s)79 Objection to Claim filed by Trustee Carol Wu). (er, ) (Entered: 05/10/2007) |
| 05/12/2007 | ●145 | BNC Certificate of Mailing (RE: related document(s)144 Order). Service Date 05/12/2007. (Admin.) (Entered: 05/12/2007) |
| 05/17/2007 | ●146 | Notice of Appeal to BAP *Re Opinion and Order on Objection to Claim*, Fee Amount $ 255. (RE: related document(s)144 Order). Appellant Designation due by 5/29/2007. Transmission to BAP due by 5/21/2007. (Attachments: # 1 Exhibit A) Filed by Creditor EOP-Peninsula Office Park, LLC (Greger, Michael) (Entered: 05/17/2007) |
| 05/17/2007 | | Receipt of filing fee for Notice of Appeal(05-55648) [appeal,ntcapl] ( 255.00). Receipt number 4266816, amount $ 255.00 (U.S. Treasury) (Entered: 05/17/2007) |