1  Jess B. Millikan, SBN 095540
   Richard G. Birinyi, Wash.BN 9212
2  C. Todd Norris, SBN 181337
   E-mail: jess.millikan@bullivant.com
3  BULLIVANT HOUSER BAILEY PC
   601 California Street, Suite 1800
4  San Francisco, California 94108
   Telephone: 415.352.2700
5  Facsimile: 415.352.2701

6  Attorneys for Bonnie Fought, Jonathan F.
   Garber, Roy K. McDonald
7

8  JAMES A. TIEMSTRA (Bar No. 96203)
   E-mail: jat@tiemlaw.com
9  Law Offices of James A. Tiemstra
   Tribune Tower
10 409 Thirteenth Street, 15th Floor
   Oakland, CA 94612
11 Telephone:    (510) 987-8000
   Facsimile:    (510) 987-8001
12
   Attorneys for Debtor
13 Connectix Corporation

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17 In re                          Case No.: C-07-03192 RMW

18 CONNECTIX CORPORATION,          CHAPTER 7

19        Debtor.                  USBC Case No. 05-55648-MM7

20                                 **APPELLEE'S OPENING BRIEF**

21                                 **Appeal Filed: May 17, 2007**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................1

II. APPELLEE'S STATEMENT OF THE CASE ....................................................2

III. ARGUMENT .....................................................................................................3

    A.  The Bankruptcy Court correctly ruled that EOP's claim for post-surrender rent must be calculated based on 15% of the time remaining on the lease. ................3

    B.  The Bankruptcy Court correctly reduced EOP's claim by the amount of the security deposit it collected ....................................................................5

        1.  The Ninth Circuit has held that security deposits reduce landlords' claims under § 502(b)(6) ..................................................................5

        2.  *Travelers* affirms the Bankruptcy Court's analytical process, and does not provide any grounds for reversal of the claim allowance in this case    ..........................................................................................11

        3.  The Bankruptcy Court's Decision Was Properly Supported..........................13

        4.  EOP's Newly Raised Evidentiary Claim Has Been Waived..........................14

IV. CONCLUSION...............................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*In re AB Liquidating Corp.,*
416 F.3d 961 (9th Cir. 2005)..........................................................................6, 10, 13

*In re Acequia,*
787 F.2d 1352 (9th Cir. 1986)..................................................................................13, 15

*In re Condor Systems, Inc.,*
296 B.R. 5 (B.A.P.9th Cir. 2003), *appeal dismissed*, 125 Fed.Appx. 797
(9th Cir. 2005)...............................................................................................7, 8, 9, 10

*In re Connectix,*
372 B.R. 488 (Bankr.N.D.Cal. 2007)..........................................................................1, 4, 6

*In re El Toro Materials Co., Inc.,*
___ F.3d ___, 2007 WL 2822019, *2 (9th Cir. October 1, 2007)......................................1, 4, 5

*In re Fobian,*
951 F.2d 1149 (9th Cir. 1991)......................................................................................11

*In re Fox West Coast Theaters,*
88 F.2d 212 (9th Cir. 1937).........................................................................................2

*In re Gulfstar Industries, Inc.,*
236 B.R. 75 (D.C.M.D.Fla. 1999)................................................................................15

*In re Hongisto,*
293 B.R. 45 (D.C.N.D.Cal. 2003).................................................................................16

*In re Mayan Networks,*
306 B.R. 295 (9th Cir.BAP 2004)..............................................................................6, 7

*In re PPI Enters., Inc.,*
228 B.R. 339 (Bankr.D.Del. 1998) *aff'd* 324 F.3d 197 (3rd Cir. 2003)..........................passim

*In re Stonebridge Technologies, Inc.,*
430 F.3d 260 (5th Cir. 2005).......................................................................................10

*In re Sylmar,*
314 F.3d 1070 (9th Cir. 2002).......................................................................................7

*In re Usinternetworking, Inc.,*
291 B.R. 378 (Bankr.D.Md. 2003)................................................................................5

*Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.),*
657 F.2d 1076, (9th Cir. 1981).............................................................................13, 15, 16

*Oldden v. Tonto Realty Co.,*
143 F.2d 916 (2d Cir. 1944).........................................................................................13

*Pope v. Savings Bank of Puget Sound,*
850 F.2d 1345 (9th Cir. 1988)......................................................................................16

*Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.,* ____
U.S. ____, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)...........................................passim

*United States v. Johnson,*
256 F.3d 895 (9th Cir. 2001).........................................................................................4

///

1

**Statutes**

§ 502(b) ............................................................................................................................8, 11

§ 502(b)(7)..............................................................................................................................7

11 U.S.C. § 502(b)(6)......................................................................................................passim

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPELLEE'S OPENING BRIEF – Case No.:  C-07-03192 RMW

# I. INTRODUCTION

This is an appeal from the Bankruptcy Court's determination regarding the allowance of a claim. Appellant EOP, the Debtor's landlord, presented a claim in the bankruptcy case for $2,335,253.99. The claim consisted of an undisputed $161,558.52 on account of unpaid rent as of the date the Debtor surrendered the premises, and a disputed $2,173,695.47 on account of post-surrender rent. Besides disputing the proper calculation of the post-surrender rent claim under bankruptcy law, the Trustee's Objection to EOP's claim argued that the landlord's claim should be reduced by the amount it collected under a Letter of Credit ("LOC") posted by the Debtor as security.

In a carefully reasoned published decision,[1] the Bankruptcy Court sustained the Trustee's position on both counts.

First, it concluded that the claim for post-surrender rent should be calculated based on the remaining time left on the lease, not based on the total rent which would have been payable. That decision was correct under the language of the Code and the weight of applicable decisional authority, and it has been validated by the Ninth Circuit in a case decided after the opinion in this case.[2]

Next, the Bankruptcy Court followed Ninth Circuit authority to determine that the LOC proceeds reduced the allowed claim. EOP's contention that *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.,* ____ U.S. ____, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) mandates reversal is wrong. *Travelers* does not address the issues presented by this appeal. Moreover, in *Travelers,* the Supreme Court followed the same path of analysis adopted by the Bankruptcy Court here – looking first to the provisions of the Bankruptcy Code and then to the pre-Code case authority governing claim allowance. EOP overstates and misrepresents the holding in *Travelers* when it argues that the Supreme Court abandoned existing jurisprudence and adopted a "black letter" rule requiring "textual support" in the "plain language of the Code."

---

[1] *In re Connectix,* 372 B.R. 488 (Bankr.N.D.Cal. 2007). Appellees' incorporate the Bankruptcy Court's statement of facts.

[2] *In re El Toro Materials Co., Inc.,* ____ F.3d ____, 2007 WL 2822019, *2 (9th Cir. October 1, 2007) (cap is measured as a fraction of the remaining term).

1    Finally, EOP raises an objection to the procedure used by the Bankruptcy Court for

2    evidentiary matters despite the fact that it never objected to that procedure below. This newly

3    raised objection is denominated "Issue 3" in EOP's statement of issues on appeal. It should be

4    rejected for two reasons. First, the Bankruptcy Court's decision is proper based on the terms of

5    the lease between EOP and the Debtor, which EOP itself submitted to the Bankruptcy Court.

6    Second, EOP waived its objection by failing to raise it below, which would have allowed the

7    Court and the parties a fair opportunity to address it then. Even if the objection had not been

8    waived, there was no reversible error because the Bankruptcy Court decision was rendered in

9    conformity with the applicable rules of procedure.

10                    **II. APPELLEE'S STATEMENT OF THE CASE**

11          Notwithstanding EOP's efforts to prejudice this Court with inaccurate, irrelevant,

12    unsubstantiated, and slanderous accusations against the Debtor and its officers, directors, and

13    shareholders,[3] this appeal presents only two issues:

14          1. Did the Bankruptcy Court correctly conclude that the claim for post-abandonment

15    rent is calculated based on 15% of the time remaining on the lease instead of 15% of the total

16    rent that would have been paid?

17          2. Did the Bankruptcy Court correctly conclude that the allowed amount of the claim

18    should be net of the security deposit (letter of credit), which the landlord collected?

19          All parties agree that the first issue presents a pure question of statutory construction.

20    EOP seeks to obtain reversal on the second issue by arguing both that the Bankruptcy Court was

21    wrong as a matter of law in its interpretation of the Bankruptcy Code, and that its decision was

22    not supported by proper admissible evidence. The Court's decision, however, is properly based

23    on the lease agreement, is consistent with Ninth Circuit authority, and was rendered in

24

25    [3] *See e.g.*, Appellant's Opening Brief at 6. The Appellant's Statement of the Case
      understandably includes only EOP's side of the story. Appellees dispute EOP's accusations and
26    they affirmatively contend that they properly fulfilled all of their legal obligations under
      applicable California law. *See e.g., In re Fox West Coast Theaters,* 88 F.2d 212 (9th Cir. 1937)
27    (it is legal for shareholder and director to file bankruptcy and reduce landlord's claims and to
      declare $8,000,000 dividend shortly prior to the bankruptcy filing) Appellees include a portion
28    of the other side in their designation of record which appears in the Appellant's Excerpts of
      Record at Tabs 19-31.

1   conformity with the procedure dictated by the Bankruptcy Court's Local Rules. EOP never

2   disputed the predicate facts for the Court's ruling, nor did it request an evidentiary hearing as

3   permitted by the Local Rules. Accordingly, it may not now be heard to argue that the decision

4   is reversible for lack of supporting evidence.

### III. ARGUMENT

6   **A.**    **The Bankruptcy Court correctly ruled that EOP's claim for post-surrender rent**
       **must be calculated based on 15% of the time remaining on the lease.**

7

8        11 U.S.C. § 502(b)(6) provides that claims for unpaid rent are to be allowed only to the

extent that they do not exceed:

> (A) the rent reserved by such lease, without acceleration, for the
> greater of one year, or 15 percent, not to exceed three years, of the
> remaining term of such lease, following the earlier of--
>
> (i) the date of the filing of the petition; and
>
> (ii) the date on which such lessor repossessed, or the lessee
> surrendered, the leased property; plus
>
> (B) any unpaid rent due under such lease, without acceleration, on
> the earlier of such dates;

The Ninth Circuit very recently addressed this section of the Bankruptcy Code, explaining that

the cap is measured as a fraction of the remaining time on the lease:

> Claims made by landlords against their bankrupt tenants for lost
> rent have always been treated differently than other unsecured
> claims. Prior to 1934, landlords could not recover at all for the
> loss of rental income they suffered when a bankrupt tenant
> rejected a long-term lease agreement; future lease payments were
> considered contingent and thus not provable debts in
> bankruptcy....The solution was a compromise in the Bankruptcy
> Act of 1934 allowing a claim against the bankruptcy estate for
> back rent to the date of abandonment, plus damages no greater
> than one year of future rent.
>
> Congress dramatically overhauled bankruptcy law when it passed
> the Bankruptcy Reform Act of 1978. However, section 502(b)(6)
> of the 1978 Act was intended to carry forward existing law
> allowing limited damages for lost rental income....Only the
> method of calculating the cap was changed. Under the current
> Act, the cap limits damages "resulting from the termination of a
> lease of real property" to "the greater of one year, or 15 percent,
> not to exceed three years, of the remaining term of such lease." 11
> U.S.C. § 502(b)(6)...***The structure of the cap-measured as a
> fraction of the remaining term***-suggests that damages other than
> those based on a loss of future rental income [e.g., damages

resulting from waste] are not subject to the cap…(Emphasis Added.)(Citations Omitted)[4]

Notwithstanding this recent Ninth Circuit explanation of the Code, EOP asks this Court to reverse the Bankruptcy Court and order calculation of the "cap" based on 15% of the money remaining due under the lease rather than the next ensuing 12.3 month period.[5]

EOP incorrectly represented to the Bankruptcy Court, and it incorrectly represents to this Court, that "15% of money" is the "majority rule." As the Bankruptcy Court recognized, the "money" model is not in fact the majority rule at all, and the cases appear evenly divided. More importantly, recently decided cases and those that provided a reasoned analysis of the issue unanimously follow the "time" rule. An examination of the early cases, which adopted the "money" model, reveals that most did so without analyzing the language of § 502(b)(6) or the history of the provision. The Bankruptcy Court correctly determined that a "15% of money" calculation has no support in either the language of the Bankruptcy Code or in the historical basis of the statutory provision, and that the cap should be based on the rent which would be owed for the 12.3 months following abandonment of the premises.[6]

Section 502(b)(6) is based on pre-Code case authority and an analogous pre-Code statute, all of which were based on the time model. There is no suggestion in the legislative history that Congress intended to abandon the well known legal standard that governed calculation of the cap when it enacted § 502(b)(6).[7]

> Debtor's position finds further support in the predecessor of Section 502(b)(6), Section 63(a)(9) of the Bankruptcy Act, 11 U.S.C. § 103(a)(9) (repealed 1978). Under Section 63(a)(9) of

---

[4] *In re El Toro Materials Co., Inc.*, ___ F.3d ___, 2007 WL 2822019, *2 (9th Cir. October 1, 2007). *See also,* footnote 3: "…The cap maxes out at 15% of 20 years …." EOP urges this Court to ignore *In re El Toro* by incorrectly representing that these statements are "dicta." When a published opinion includes a reasoned determination of an issue, it is "law of the circuit" despite the fact that it may not be logically required for the decision. *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001). Because the discussion of the history and scope of the limitation on landlord's claims in *In re El Toro* was germane to the ultimate decision, which determined that tort damages were not limited by § 502(b)(6), they are "law of the circuit," not dicta.

[5] 15% of the remaining term of the lease as of the date of surrender was 12.3 months.

[6] *In re Connectix, supra,* 372 B.R. at 493-94.

[7] The Supreme Court recently acknowledged the legitimacy of this approach when interpreting a statute. *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, --- U.S. ----, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007).

the Bankruptcy Act, a landlord's claim for rejection damages could not exceed "the rent reserved by the lease, without acceleration, for the year next succeeding the date of surrender." (Emphasis added). Absent any evidence from the plain language or legislative history of Section 502(b)(6) that Congress intended to modify how the one-year period is determined in the calculation of the rejection damage cap, this Court is inclined to accept that no such intention to change existed and that the rent reserved for one year is the year next succeeding the earlier of the petition date or date of surrender. *See Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957) (stating that "no changes in law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed"); *see also In re Woodscape Ltd. Partnership*, 134 B.R. 165 (Bankr.D.Md. 1991) (*citing Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986)).[8]

This analysis applies with equal force to EOP's efforts to have this Court apply the "money" model. There is nothing in the legislative history to conclude that Congress intended to abandon the time calculation when it enacted the Bankruptcy Code. Moreover, as the Bankruptcy Court observed, the statutory provision compares two time periods and is limited to a third time period. Appellees respectfully urge that the cases which adopt a "money" model were wrongly decided.[9]

**B.    The Bankruptcy Court correctly reduced EOP's claim by the amount of the security deposit it collected**

      **1.    The Ninth Circuit has held that security deposits reduce landlords' claims under § 502(b)(6)**

The letter of credit security deposit that EOP held reduces the amount of its allowed claim under § 502(b)(6). EOP's contrary view of the "clear" meaning of the statute was rejected by the Ninth Circuit in 2005, when it determined that there was no distinction between cash

---

[8] *In re Usinternetworking, Inc.,* 291 B.R. 378, 381-82 (Bankr.D.Md. 2003).

[9] Appellant's hypothetical arguments regarding the more natural reading of the statute, the potential effects of "free rent" and the alleged discrepancy between the time and money approach deserve little comment. First, they are arguments that would apply with equal force to the "one year" calculation, which has unanimously been recognized as the next ensuing 12 month period. Second, they ignore entirely the history of the provision, which the Ninth Circuit has recognized Congress intended to carry over into the new statute. *In re El Toro Materials Co., Inc., supra.*

1  deposits and letters of credit.[10]  The Ninth Circuit did not limit its decision to letters of credit

2  drawn pre-petition or post-petition, nor did it limit its decision to letters of credit that were

3  secured or unsecured.  In fact, the Ninth Circuit considered and rejected the very interpretation

4  of the statute offered by EOP.

5      EOP says that "the plain language of section 502(b)(6)" provides a four step process that

6  mandates application of its security draws to the disallowed portion of its claim rather than the

7  allowable portion.[11]  As explained by the Ninth Circuit, though, that analysis is incorrect:

> According to AMB, the plain language of Section 502 requires a court to:  (1) determine the landlord's gross damages (net of any recovery through re-letting the property); (2) subtract from those gross damages any "mitigation" from security deposits or letters of credit; (3) compare this "mitigated damages" amount to the statutory cap of one year's rent; and (4) allow a claim for the lesser of either the "mitigated damages" or one year's rent. Employing this approach, AMB's gross damages of $5 million, minus the $1 million Security Deposit/Letter of Credit yield "mitigated damages" of $4 million.  These "mitigated damages" exceed one year's rent of $2 million.  Accordingly, AMB argues the bankruptcy court should have allowed its entire $2 million claim.
>
> AMB's plain language argument is misplaced.  On its face, Section 502(b)(6) makes no mention of how security deposits should be applied in the calculation of allowable claims.  Thus, the statute is ambiguous as to whether such deposits should be applied to a landlord's gross damages or its capped claim. Given this ambiguity, Congress's explicit endorsement of *Oldden* [*Oldden v. Tonto Realty Co.*, 143 F.2d 916 (2d Cir. 1944)] prevents us from accepting AMB's invitation to reject the case outright.[12]

20  The Ninth Circuit went on to hold that the proceeds of the letter of credit were correctly

21  subtracted from the landlord's allowed claim.

22      As the Bankruptcy Court recognized, there are only two published cases that expressly

23  consider whether pre-petition draws on letters of credit affect "cap" calculations.[13]  One is a

---

[10] *In re AB Liquidating Corp.*, 416 F.3d 961, 964 (9th Cir. 2005).  *See also In re Mayan Networks,* 306 B.R. 295, 301 (9th Cir.BAP 2004); *In re PPI Enters., Inc.*, 228 B.R. 339, 344-45 (Bankr.D.Del. 1998) *aff'd* 324 F.3d 197 (3rd Cir. 2003).

[11] EOP's Opening Brief at 14.

[12] *In re AB Liquidating,* 416 F.3d at 964.

[13] *In re Connectix, supra,* 372 B.R. at 491.  Appellant's arguments that *In re Mayan Networks,* 306 B.R. 295 (9th Cir.BAP 2004), mandates a different result are misplaced.  The *Mayan* Court indicated that *PPI* would control with respect to pre-petition draws on letters of credit where the

1  Third Circuit case involving a landlord's claim under § 502(b)(6) [14] while the other is a

2  Bankruptcy Appellate Panel case involving a terminated employee's claim as determined under

3  § 502(b)(7). [15]  The Bankruptcy Court here correctly agreed with the Third's Circuit's analysis.

4  In *In re PPI Enterprises, Inc.*, the landlord had drawn on the letter of credit <u>five years prior</u> to

5  the bankruptcy filing, but after the lease termination.  Noting that the language of § 502(b)(6)

6  requires the determination of the allowable claim from the earlier of the date of the bankruptcy

7  petition or the date of lease termination, the Third Circuit affirmed the Bankruptcy Court's

8  application of the security deposit to reduce the landlord's claim [16]  The Bankruptcy Court

9  explained its reasoning in a published decision. [17]  EOP's arguments to this Court parrot the

10  landlord's arguments rejected by the Bankruptcy Court and the Third Circuit.

11  > In response, Solow states that the letter of credit was not a security
    > deposit that constituted estate property because he drew on the
12  > security deposit prior to PPI's filing, and thus it should not be
    > applied to reduce his § 502(b)(6) claim. [18]
13

14  That position was soundly rejected because it ignored consistent precedent, the language of the

15  statute, and the legislative history.

16  > The legislative history and case law pertaining to the treatment of
    > security deposits under § 502(b)(6) ***makes clear that any security***
17  > ***deposit held by a landlord at the time of termination of the lease***
    > ***of real property will be applied in satisfaction of the claim***
18  > ***allowed under § 502(b)(6)***.  The legislative history of § 502(b)(6)
    > states that the landlord "will not be permitted to offset his actual
19  > damages against his security deposit and then claim for the
    > balance under [§ 502(b)(6)].  ***Rather, his security deposit will be***
20  > ***applied in satisfaction of the claim that is allowed under***

21  Debtor supplied security to the issuing bank.  *Id.* 306 B.R. at 311 [concurring opinion].  Thus,
   analysis of the issue turns on the entitlement following "faithful performance of the lease" not
22  following default and application of the letter of credit proceeds.

23  [14] *In re PPI Enterprises, Inc.*, 324 F.3d 197 (3rd Cir. 2003).  The Bankruptcy Court decision in
   *PPI* was cited with approval by the Ninth Circuit in *In re Sylmar*, 314 F.3d 1070, 1075 (9th Cir.
24  2002).

   [15] *In re Condor Systems, Inc.*, 296 B.R. 5 (B.A.P.9th Cir. 2003), *appeal dismissed*, 125
25  Fed.Appx. 797 (9th Cir. 2005).  At the Ninth Circuit, the appeal from the Bankruptcy Appellate
   Panel decision was dismissed based on a determination that the BAP decision was not a final
26  decision.  Accordingly, Appellees submit that *Condor* was of limited value as authority in the
   Bankruptcy Court and perhaps only represents law of the case.

27  [16] *In re PPI Enterprises, Inc, supra*, 324 F.3d at 208 n.19.

28  [17] *In re PPI Enters., Inc.*, 228 B.R. 339(Bankr.D.Del. 1998).

   [18] *Id.* 228 B.R. at 350.

1    *[§ 502(b)(6) ]"*H.R.Rep. No. 595, at 353-54 (1977); S.Rep. No.
     989, at 63-64 (1978).

2

3    *Moreover, cases have uniformly held that security
     deposits held by the landlord or applied by the landlord after the
     termination of the lease will be deducted from that landlord's
     § 502(b)(6) claim.* See, e.g., *In re Handy Andy Home
     Improvement Centers, Inc.*, 222 B.R. 571, 574-75 (Bankr.N.D.Ill.

4    1998); Blatstein, [*In re Blatstein*, 1997 WL 560119, *16 (E.D.Pa.
     Aug. 26, 1997);1997 WL 560119, *16-17; *In re Atlantic
     Container Corp.*, 133 B.R. 980, 989 (Bankr.N.D.Ill. 1991).

5

6

7    ....However, these differences in timing are irrelevant
     because § 502(b)(6)'s cap on a landlord's claim takes effect at the

8    earlier of (i) the date of filing and (ii) the date on which lessee
     surrenders or lessor repossesses the property. Thus, so long as the

9    landlord applied the security deposit at a time subsequent to either
     (i) or (ii) above, § 502(b)(6) will require that security deposit to be

10   subtracted from the landlord's § 502(b)(6) claim (emphasis
     added).[19]

11

12   Application of the security deposit to reduce the allowed § 502(b)(6) claim is appropriate where,

13   as here, it is undisputed that EOP applied the letter of credit proceeds after the surrender and

14   termination of the lease.

15   EOP's reliance on the Bankruptcy Appellate Panel decision in *In re Condor Systems,*

16   *Inc.*, 296 B.R. 5 (B.A.P. 9th Cir. 2003), *appeal dismissed*, 125 Fed.Appx. 797 (9th Cir. 2005) is

17   misplaced. That case involved a claim from a terminated employee, and therefore implicated a

18   different subsection of § 502(b). In deciding *In re Condor Systems*, Judge Klein specifically

19   rejected precedent involving claims from landlords, and held that the two sub-sections of

20   § 502(b) should be construed differently:

21   Security deposits [under leases] are peculiar, term-of-art creatures
     of contract that have a rich history in the specialized field of

22   landlord-tenant law that differentiates them from other lease-
     related remedies and from employment termination damages. In

23   the classic model, represented by *Oldden*, 143 F.2d at 920, the
     landlord holds a refundable cash deposit representing a month or

24   two of rent against the possibility of compensable damages to the
     leasehold property.

25

26   Where a letter of credit or other third-party obligation is
     intended to be a security deposit under a lease, it may be
     appropriate to analyze the situation as involving a security

27   deposit. The Third Circuit, for example, recently addressed a
     letter of credit that was explicitly agreed to be a security deposit

28

---

[19] *Id.*

on a lease. *PPI Enter.*, 324 F.3d at 209. It does not follow, however, that every letter of credit or other third-party guarantee constitutes a security deposit. Rather, even in the landlord-tenant arena, parties must intend that it be a security deposit.

> **Thus, we agree with Young and our prior panel in *Bitters* that the claims treatment of security deposits pursuant to leases of real property presents a special situation that does not readily translate to § 502(b)(7).** (Emphasis added).[20]

EOP also improperly cites and relies on dicta in an unpublished decision issued by Judge Montali and filed only on the Bankruptcy Court's website.[21] A statement on the Bankruptcy Court's website provides,

> NOTICE: Publishers of court opinions should contact the judge issuing the opinion for approval prior to publishing any opinion found on this website.

EOP does not cite, and Appellees have not been able to locate, a published version of Judge Montali's memorandum decision, which suggests that he has never given permission to publish. Under the provisions of Local District Court Rule 7-14, opinions that are not designated for publication may not be cited in other cases. Nevertheless, to respond to EOP's brief, Appellees therefore explain why the Bankruptcy Court in this case was correct when it declined to adopt the same reasoning.

First, in the case before Judge Montali, the landlord and the debtor had agreed that the lease had not been surrendered prior to the bankruptcy filing, and that the pre-petition draws on the letter of credit had paid then current rent obligations under the debtor's lease.[22] Accordingly, as a factual matter, on the date of filing the bankruptcy petition in Judge Montali's case there was a remaining letter of credit amount, and the date for measuring the § 502(b)(6) cap was the date of filing of the petition. Judge Montali's discussion concerning a lease termination prior to the date of filing, in which he rejects *In re PPI Enterprises, Inc.* and follows *Condor*, is entirely hypothetical.

---

[20] *In re Condor Systems, Inc., supra*, 296 B.R. at 18-19.

[21] AER, Tab 7

[22] AER, Tab 7, pg. 37, ln. 21-23.

1    Second, not only did Judge Montali discuss a hypothetical situation that was not before

2    him, but his reliance on *Condor* is misplaced. As that decision itself states, the rules governing

3    employee claims are different from the rules applicable to landlords. Moreover, the analysis in

4    *Condor* is inconsistent with the Ninth Circuit's opinion in *In re AB Liquidating Corp., supra.*

5    As shown above, the Ninth Circuit never distinguished between pre-petition and post-petition

6    draws on a letter of credit, and its decision suggests that security deposits collected after the

7    applicable trigger date (statutorily defined as the earlier of the lease termination or the filing of

8    the bankruptcy petition) always reduce the allowable claim. Furthermore, the Ninth Circuit

9    expressly declined to accept the appellant's suggestion that it adopt the reasoning from

10    *Condor.*[23]

11    Finally, Appellant's position would lead to conflicting results depending on the timing of

12    a landlord's application of a letter of credit. Those landlords who applied their security prior to

13    the filing of a bankruptcy court would fare significantly better than landlords who held their

14    security on the date of filing. In the former situation, landlords would be able to recover their

15    security and the full amount of the § 502(b)(6) claim because by the time of the filing the

16    security would have been exhausted. The same logic would apply to cash security deposits as

17    well as letters of credit. Quite understandably there is no case which sanctions such a result.[24]

18

19

---

20    [23] "However, despite AMB's argument, the resolution of this appeal does not require that we
      decide whether Judge Klein has set forth the appropriate procedure for applying letter of credit

21    security deposits to landlords' claims." *Id.*, 416 F.3d at 965.

22    [24] Appellant's reliance on *In re Stonebridge Technologies, Inc.*, 430 F.3d 260 (5th Cir. 2005) to
      argue otherwise is also misplaced. In *Stonebridge* the landlord never filed a claim in the

23    bankruptcy case. Rather, it held a letter of credit in excess of the § 502(b)(6) cap. The trustee
      sued to recover the amount the landlord had received in excess of the § 502(b)(6) cap. The Fifth

24    Circuit concluded that the landlord was not limited by § 502(b)(6) because it had not filed a
      claim.

25                    Thus, the damages cap of § 502(b)(6) does not apply to limit the
                      beneficiary's entitlement to the proceeds of the letter of credit

26                    unless and until the lessor makes a claim against the estate. We
                      find, therefore, that further inquiry into the appropriate

27                    interpretation of § 502(b)(6) is unnecessary in this case because
                      EOP did not file a claim against the estate.

28    *Id.* 430 F.3d at 270 (footnote omitted).

The Bankruptcy Court's analysis of this issue, and its decision to follow the Third Circuit's opinion in *In re PPI Enterprises*, is correct. Nothing in the language of § 502(b)(6) or in the legislative history indicates that the timing of the application of a security deposit makes a difference, so long as it occurs after the termination of the lease. In this case there is no dispute that EOP applied the proceeds of the letter of credit after the surrender of the property.

### 2. *Travelers* affirms the Bankruptcy Court's analytical process, and does not provide any grounds for reversal of the claim allowance in this case

Appellant devotes a substantial portion of its Brief to a misguided view of the Supreme Court's recent decision in *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, --- U.S. ----, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007).[25] Notwithstanding that the Supreme Court followed precisely the same analytical process followed by the Bankruptcy Court here – referring to pre-Code decisional authority and legislative history to provide historical context and to shed light on the meaning of the statutory language -- EOP argues that the Bankruptcy Court's decision is wrong because it is not based solely and exclusively on language from the Code.

EOP's suggestion that *Travelers* intended to modify the long standing and well considered jurisprudence concerning proper statutory interpretation, in favor of a "black letter" rule requiring "textual support" in the "plain language of the code" is wrong. In *Travelers* the Court considered the Ninth Circuit's rule that attorney's fees incurred litigating purely bankruptcy issues could not be awarded to a prevailing party, even if a contractual or statutory provision granted a party those rights.[26] As the Court explained, "[t]his case requires us to consider whether the Bankruptcy Code disallows contract-based claims for attorney's fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law. We conclude that it does not."[27] The Court then examined the provisions of § 502(b) to see if there were any provisions that would be applicable to contract based attorney fee claims.

---

[25] *See* Appellant's Opening Brief, pg. 11-13.

[26] That rule was announced in *In re Fobian*, 951 F.2d 1149 (9th Cir. 1991).

[27] *Travelers*, 127 S.Ct. at 1204.

APPELLEE'S OPENING BRIEF – Case No.: C-07-03192 RMW

But even where a party in interest objects, the court "shall allow" the claim "except to the extent that" the claim implicates any of the nine exceptions enumerated in § 502(b). *Ibid.* Those exceptions apply where the claim at issue is "unenforceable against the debtor...under any agreement or applicable law," § 502(b)(1); "is for unmatured interest," § 502(b)(2); "is for [property tax that] exceeds the value of the [estate's] interest" in the property, § 502(b)(3); "is for services of an insider or attorney of the debtor" and "exceeds the reasonable value of such services,"§ 502(b)(4); is for unmatured debt on certain alimony and child support obligations, § 502(b)(5)*); is for certain "damages resulting from the termination" of a lease or employment contract, § § 502(b)(6) and (7);* "results from a reduction, due to late payment, in the amount of...credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor,"§ 502(b)(8); or was brought to the court's attention through an untimely proof of claim, § 502(b)(9).

**Travelers' claim** for attorney's fees **has nothing to do with** property tax, child support or alimony, services provided by an attorney of the debtor, **damages resulting from the termination of a lease** or employment contract, or the late payment of any employment tax. See §§ 502(b)(2)-(8). Nor does it appear that the proof of claim was untimely. *See* § 502(b)(9). Thus, Travelers' claim must be allowed under § 502(b) unless it is unenforceable within the meaning of § 502(b)(1).[28]

Thus, the Supreme Court acknowledged that § 502(b)(6) is one of the express provisions of the Bankruptcy Code that provides for the disallowance of a claim as a substantive matter of federal law.

Not only did the Supreme Court look to established pre-Bankruptcy Code case authority governing claim allowance to assist its construction of the statute, it cited with approval the statutory interpretation cases which hold that the language in a new statute will not be construed to effect a change in interpretation without some express indication from Congress that it intended that result.

In light of the broad, permissive scope of § 502(b)(1), and our prior recognition that "the character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy," it necessarily follows that the *Fobian* rule cannot stand. *Security Mortgage*, 278 U.S., at 154, 49 S.Ct. 84*; see Cohen v. de la Cruz*, 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("We ...'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure'" (*quoting Pennsylvania*

---

[28] *Id.* (Emphasis added.)

*Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563, 110
S.Ct. 2126, 109 L.Ed.2d 588 (1990))).[29]

In short, the rules for construing § 502(b)(6) remain the same post-*Travelers* as they were

before, and the Bankruptcy Court's decision, which was based on *In re AB Liquidating Corp.*,

*supra* (interpreting the language based on *Oldden v. Tonto Realty Co.*, 143 F.2d 916 (2d Cir.

1944) and *PPI Enterprises, supra* is correct and should be affirmed.

3.    **The Bankruptcy Court's Decision Was Properly Supported**

The Bankruptcy Court correctly found, based on the terms of the lease which was

properly in the record before it, that the security deposit/letter of credit was property of the

debtor. The Bankruptcy Court's factual findings need not be based solely on "evidence"

presented at the hearing. The applicable Ninth Circuit authority expressly permits Bankruptcy

Judges to consider all of the evidence previously presented in connection with other matters in

making factual determinations.[30] Here, the lease was in the record as EOP had submitted it in

conjunction with its claim.[31] The Bankruptcy Court summarized the relevant provision of the

lease:

> Under section 4 of the lease, which is entitled "Security Deposit,"
> Connectix had to provide EOP with a $50,000 security deposit in
> the form of cash or a letter of credit. Section 4 also required
> Connectix to deliver an additional "Letter of Credit, pursuant to
> the provisions contained in Section 36." Section 36, in turn,
> provided that the requisite letter of credit would, initially, be in the
> amount of $2,111,205, subject to the specified reductions
> beginning in year five. EOP was entitled to draw the entire
> amount of the additional letter of credit upon any event of default,
> but any amount drawn was to be held "as a security deposit,
> subject to the terms of Section 4." **Any unused security deposit**
> **was to be returned to Connectix at the expiration or**
> **termination of the lease.**[32]

---

[29] *Id.* 127 S.Ct. at 1206-07.

[30] *In re Acequia*, 787 F.2d 1352 (9th Cir. 1986); *Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.)*, 657 F.2d 1076, (9th Cir. 1944).

[31] AER, Tab 18. See, particularly, pp. 169 and 226-227.

[32] *In re Connectix, supra*, 372 B.R. at 489.

1    EOP has not disputed that the lease was properly in evidence.  Because that document

2    alone is sufficient to sustain the Bankruptcy Court's conclusion, EOP's challenge to the decision

3    fails.

4        **4.    EOP's Newly Raised Evidentiary Claim Has Been Waived**

5        In the Northern District of California, the claim objection process in Bankruptcy Court is

6    governed by Local Rule 3017-1.  That rule provides that if any party asserts that a factual

7    dispute exists, the initial hearing will be a status conference and the Court will not receive any

8    evidence:

9            Where a factual dispute is involved, the initial hearing on an
            objection shall be deemed a status conference at which the Court
10           will not receive evidence.  Where the objection involves only a
            matter of law, the matter may be argued at the initial hearing.
11           Any notice of hearing on the claim objection shall so state.[33]

12   At the hearing, and consistent with the Local Rule, the Court inquired as to whether there were

13   any factual disputes.  Despite two specific questions from the Court, EOP never stated that an

14   evidentiary hearing was required.[34]  In fact, its counsel implied just the opposite, twice advising

15   the Court that EOP had no basis to dispute the only potentially disputed "fact," namely whether

16   the letter of credit was secured by property of the debtor:

17           THE COURT:  So, you don't think there – you really don't think
            there are any factual issues there.
18
            MS. SORENSEN [counsel to the Trustee]:  No.
19
            THE COURT: Okay.  I'm going to accept that.  Nobody else
20           thinks there's any factual issues here; do they?

21           MR. GREGER [EOP's counsel]: Your Honor, we simply don't
            know whether or not it's secured or was secured or not secured by
22           assets of the debtor.[35]

23   Later in the hearing, the following occurred:

24           MR. GREGER:  It did, Your Honor.  I just wanted the record to
            be clear that from the landlord's perspective, we don't know
25

26   ———————————
     [33] The Trustee's hearing notice did expressly include the required information.  AER Tab 6, pg.
     25.

27   [34] Although EOP's Opening Brief asserts that it "raised the Trustee's lack of evidence at the
     hearing on the objection."  EOP fails to cite a reference to the transcript where that occurs and
28   an examination of the transcript shows just the opposite, it never occurred.

     [35] AER, Tab 17, pg. 115, ln. 19-25, pg 116, ln. 1-2.

1    secured versus unsecured. It's not a fact that we've discovered. I
don't have – I can't stand here and dispute it because I don't know
2    factually one way or the other.

3    THE COURT: Okay. Does anybody think that there are factual
issues that are necessary for determination here before we get to
4    the legal issues?

5    MR. TIEMSTRA [Debtor's counsel]: No, Your Honor. I thought
it was actually undisputed that there was a certificate of
6    deposit with the bank that issued the letter of credit, so I'm sort of
surprised that counsel says they don't know if that's a factual
7    issue or not because it's been in evidence in various parts of this
case for years, and when they drew down on the letter of credit, it
8    was at the same bank.[36]

9        Despite the Local Rule's clear directive to parties that the first hearing would only be a

10    status conference if any party deemed an evidentiary hearing necessary, EOP never requested an

11    evidentiary hearing. Accordingly, counsel argued the merits of the Trustee's Objection to the

12    claim,[37] and the Court rendered its decision.

13        This type of procedure is consistent with the overall purpose of the Bankruptcy Code

14    and the requirement that contested matters be decided expeditiously. It is also consistent with

15    the applicable Ninth Circuit authority, which permits the Bankruptcy Court to consider prior

16    testimony, evidence and the Court file in determining issues of fact in a bankruptcy case.[38]

17    Other courts have recognized that a Bankruptcy Judge may make determinations without taking

18    any evidence at all, considering only the Court file.[39]

19        EOP has waived its objection based on the alleged failure to provide evidence that the

20    Letter of Credit was secured by assets of the Debtor. Although EOP alleges that it preserved

21    this issue in its original Memorandum of Points and Authorities,[40] it included no argument on

22    the issue in the Memorandum, it included no reference to the issue in its Supplemental

23

24

----

25    [36] AER, Tab 17, p. 118, ln. 6-21.

    [37] AER, Tab 17.

26    [38] *In re Acequia,* 787 F.2d 1352, 1358 (9th Cir. 1986) (Bankruptcy Court may consider prior
27    evidence); *Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.),* 657 F.2d 1076, (9th
Cir. 1981), (Court could consider all of the previous pleadings and papers in the suit).

28    [39] *See e.g. In re Gulfstar Industries, Inc.,* 236 B.R. 75 (D.C.M.D.Fla. 1999).

    [40] EOP's Opening Brief, at 24.

1  Memorandum,[41] it did not argue the issue at the hearing, nor did it request a ruling on the issue

2  from the Bankruptcy Court. During that hearing, the Bankruptcy Judge *twice* inquired whether

3  there was any disputed fact. Both times, EOP's counsel declined her implicit invitation to

4  convert the hearing into a status conference and schedule an evidentiary hearing. Under any

5  reasonable interpretation of the Local Rules and the representations of EOP's counsel, Judge

6  Morgan was justified in concluding that the facts were undisputed and that the issue should be

7  decided as a matter of law.[42]

8      This Court should emphatically reject EOP's efforts to sandbag the Bankruptcy court,

9  the Trustee, and the other interested parties. A party cannot obtain review of an issue that it

10  failed to properly raise below. The general rule in the Ninth Circuit is that "[a]n appellate court

11  will not review an issue not raised or objected to below unless necessary to prevent manifest

12  injustice." *Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.),* 657 F.2d 1076, (9th

13  Cir. 1981). *See also In re Hongisto,* 293 B.R. 45 (D.C.N.D.Cal. 2003).

14                          **IV. CONCLUSION**

15      For the foregoing reasons, Appellees respectfully urge the Court to affirm the

16  Bankruptcy Court's thoughtful, well reasoned, and correct analysis of the issues surrounding the

17  allowance of EOP's claim as a matter of federal law.

18      Respectfully submitted,

19  DATED: November 19, 2007.              BULLIVANT HOUSER BAILEY PC

20

21                                        By _____

22                                             Jess B. Millikan
                                             Attorneys for Bonnie Fought, Jonathan F.
                                             Garber, Roy K. McDonald

23  DATED: November 19, 2007.

24                                        LAW OFFICES OF JAMES A. TIEMSTRA

25

26                                        By _____
                                             James A. Tiemstra
                                             Attorneys for the Debtor

27
   _____
28  [41] AER, Tab 7.

    [42] *See also Pope v. Savings Bank of Puget Sound,* 850 F.2d 1345 (9th Cir. 1988) (finding that
    counsel waived right to jury trial by failing to object to Judge's announced intention).

1  Memorandum,[41] it did not argue the issue at the hearing, nor did it request a ruling on the issue

2  from the Bankruptcy Court.  During that hearing, the Bankruptcy Judge *twice* inquired whether

3  there was any disputed fact.  Both times, EOP's counsel declined her implicit invitation to

4  convert the hearing into a status conference and schedule an evidentiary hearing.  Under any

5  reasonable interpretation of the Local Rules and the representations of EOP's counsel, Judge

6  Morgan was justified in concluding that the facts were undisputed and that the issue should be

7  decided as a matter of law.[42]

8       This Court should emphatically reject EOP's efforts to sandbag the Bankruptcy court,

9  the Trustee, and the other interested parties.  A party cannot obtain review of an issue that it

10  failed to properly raise below.  The general rule in the Ninth Circuit is that "[a]n appellate court

11  will not review an issue not raised or objected to below unless necessary to prevent manifest

12  injustice." *Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.),* 657 F.2d 1076, (9th

13  Cir. 1981). *See also In re Hongisto,* 293 B.R. 45 (D.C.N.D.Cal. 2003).

14                          **IV. CONCLUSION**

15       For the foregoing reasons, Appellees respectfully urge the Court to affirm the

16  Bankruptcy Court's thoughtful, well reasoned, and correct analysis of the issues surrounding the

17  allowance of EOP's claim as a matter of federal law.

18       Respectfully submitted,

19  DATED:  November 19, 2007.              BULLIVANT HOUSER BAILEY PC

20

21                                  By _____

22                                     Jess B. Millikan
                                       Attorneys for Bonnie Fought, Jonathan F.
                                       Garber, Roy K. McDonald
23  DATED:  November 19, 2007.

24                                  LAW OFFICES OF JAMES A. TIEMSTRA

25

26                                  By _____
                                       James A. Tiemstra
27                                     Attorneys for the Debtor

_____
28  [41] AER, Tab 7.

[42] *See also Pope v. Savings Bank of Puget Sound,* 850 F.2d 1345 (9th Cir. 1988) (finding that counsel waived right to jury trial by failing to object to Judge's announced intention).

6089487.1                           —16—