REIDUN STRØMSHEIM # 104938
LINDA SORENSEN # 72753
STROMSHEIM & ASSOCIATES
201 California Street, Suite 350
San Francisco, California 94111
Telephone:    (415) 989-4100
Fax:              (415) 989-2235
lsorensen@stromsheim.com

Attorneys for CAROL W. WU,
as Trustee for Debtor CONNECTIX CORPORATION,
Appellee.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CONNECTIX CORPORATION,<br><br>Debtor. | Case No. C-07-03192 RMW |
| EOP-PENINSULA OFFICE PARK, LLC,<br><br>Appellant,<br><br>v.<br><br>CAROL W. WU, as Trustee of the estate of CONNECTIX CORPORATION, Debtor,<br><br>Appellee. | United States Bankruptcy Court Case No. 05-55648 MM7 Chapter 7<br><br>**BANKRUPTCY APPEAL RESPONDING BRIEF OF APPELLEE CAROL W. WU, TRUSTEE FOR DEBTOR CONNECTIX CORPORATION** |

STROMSHEIM &
ASSOCIATES

**TABLE OF CONTENTS**

Page

STATEMENT OF JURISDICTION .................................................. 1

STANDARD OF REVIEW ........................................................ 1

ISSUES ON APPEAL ........................................................... 2

SUMMARY OF THE APPEAL ................................................... 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................ 3

ARGUMENT .................................................................. 6

A.   LETTERS OF CREDIT MUST BE APPLIED AGAINST THE "CAP". . . .......... 7

B.   THE 15% MEANS THE TERM OF THE LEASE IN YEARS ..................... 9

C.   EOP FAILED TO PRESERVE ANY FACTUAL DISPUTE ..................... 10

CONCLUSION .............................................................. 12

i

STROMSHEIM &
ASSOCIATES

# TABLE OF AUTHORITIES

**CASES**                                                                 Page

*In re AB Liquidating Corp.*, 416 F.3d 961 (9th Cir. 2005) ............................... 7

*In re Condor Systems, Inc.*, 296 B.R. 5 (BAP 9th Cir. 2003) ........................... 8

*In re Connectix Corporation*, 372 B.R.488 (Bankr. N.D.Cal. 2007) ................. passim

*Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.)*
165 F.3d 1243, 1245 (9th Cir. 1999) ............................................... 1

*In re El Toro Materials Company, Inc.*, __ F.3d __, 2007 WL 2822019 (9th Cir. 2007) ...... 6, 9

*In re Flanigan*, 374 B.R. 568, 575 (Bankr. W.D.Pa. 2007) ........................... 6, 7

*Ford v. Baroff (In re Baroff),*105 F.3d 439, 441 (9th Cir. 1977) ......................... 1

*In re Iron Oak Supply Corp.*, 169 B.R. 414 (Bankr. E.D. Cal. 1994) ..................... 9

*In re Malease 14FK Corp.*, 351 B.R. 34, 41 (E.D.N.Y. 2006) .......................... 7

*In re Mayan Networks Corporation*, 306 B.R. 295 (9th Cir. BAP 2004) ................ 7

*In re Rodriguez*, 375 B.R. 535, 545 (BAP 9th Cir. 2007) ............................... 8

*In re Stonebridge Technologies, Inc.*, 430 F.3d 260 (5th Cir. 2005) ..................... 9

*Travelers Casualty and Surety Co. of America v.
Pacific Gas and Electric Co.*, __ U.S. ___, 127 S.Ct. 1199 (2007) ...................... 8

**OTHER AUTHORITIES**

*Travelers and the Implications on the Allowability of Unsecured Creditors' Claims for Post-Petition Attorneys' Fees Against the Bankruptcy Estate*, 29 Cal. Bankr. J. No. 3, 379 (2007), and 81 Am. Bankr. L. J. 123 (2007) ............................................. 8

**STATUTES AND RULES**

11 U.S.C. §502(b)(6) ........................................................ passim

N.D.Cal. Local Bankruptcy Rule 3007-1 ...................................... 4,10

STROMSHEIM &
ASSOCIATES

This bankruptcy appeal brief is filed on behalf of Carol W. Wu, the Chapter 7 trustee ("Trustee") of the bankruptcy estate of Connectix Corporation ("Debtor" or "Connectix"), Case No. 05-55648 pending in the United States Bankruptcy Court for the Northern District of California, Division 5 ("Bankruptcy Case").

This appeal concerns a "contested matter" objection to claim rather than an adversary proceeding, which was conducted in the "main" bankruptcy case, *In re Connectix Corporation,* No. 05-55648, United States Bankruptcy Court, Northern District of California. The claimant was EOP-Peninsula Office Park, L.L.C. ("EOP"). The Trustee commenced the objection to claim and prevailed in the bankruptcy court, as reflected in the May 10, 2007 *Opinion and Order on Objection to Claim* ("Opinion")[1] from which EOP has appealed.[2]

## STATEMENT OF JURISDICTION

The District Court hears this appeal pursuant to 28 U.S.C. §158(a)(1).

## STANDARD OF REVIEW.

The district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions. *See Ford v. Baroff (In re Baroff),* 105 F.3d 439, 441 (9th Cir. 1977). Thus, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *See Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.)* 165 F.3d 1243, 1245 (9th Cir. 1999). The Trustee agrees that a court of appeal reviews *de novo* questions of statutory interpretation. The Trustee disagrees that there is any factual issue to be reviewed in this appeal.

---

[1] *In re Connectix Corporation*, 372 B.R. 488 (Bankr. N.D.Cal. 2007), hereinafter referenced as *Connectix* with the page citation at which the discussion appears in the official reporter, rather than in EOP's excerpts of record (Doc. 13-0079 ff).

[2] The Trustee is therefore the appellee herein, and the caption should more properly be as shown in this brief rather than EOP's. The Debtor and its principal shareholder group each filed briefs and participated at hearing below, in support of the Trustee's position, as reflected in the Excerpts of Record including the Transcript.

**ISSUES ON APPEAL**

1. Is payment by a letter of credit held by a landlord applied against the "capped" allowable claim of the landlord for bankruptcy distribution purposes, regardless of when the letter of credit is drawn down?

2. Does the greater of one year or 15% of the remaining term of the lease (and not to exceed 3 years), mean 15% of the remaining years of the lease? (In the instant case, one year was greater than 15% of the remaining years.)

3. Did EOP preserve any right to trial of the fact of whether or not its letter of credit was secured by property of the Debtor?

**SUMMARY OF THE APPEAL**

The essential facts material to this appeal have never been in dispute. The subjects of the appeal are instead two legal issues of statutory interpretation, the bankruptcy court's decision on each of which should be sustained on appeal, in the Trustee's favor. The issues of statutory construction are summarized as follows. In a bankruptcy case, the "cap" of 11 U.S.C. §502(b)(6) governs how much of a landlord's contract claim, for rents under a lease, becomes an "allowed" claim to share in the assets of the bankruptcy estate on a par with other general unsecured claims. EOP does not contest the applicability of the "cap." It does not expect to have an allowed claim for damages it states are in excess of $7 Million after mitigation of damages. Instead it challenges two principles that are components of the calculation of the "cap". Because the statutory language expresses precise calculation, and leaves no room for discretionary or equitable considerations, the outcome of these challenges would be equally applicable to any other landlord and any other bankruptcy estate.

The First Issue is whether a letter of credit (LOC) in favor of a landlord, already drawn down <u>prepetition</u>, should be subtracted from what would otherwise be the "cap" calculation, or whether instead the landlord can be allowed the unreduced "cap" calculation, and instead apply the LOC to the portion of its damages that would be not be an allowable claim for bankruptcy administration purposes. EOP of course wants to keep the LOC amount <u>and</u> receive the unreduced

"cap" allowance as well.  In the Ninth Circuit the law is already established that if the LOC has not been drawn as of the petition date, it is applied against the "cap" calculation.  There is no valid distinction for a prepetition draw.

The Second Issue is whether "15 percent, not to exceed three years, of the remaining term of such lease" is 15 percent of the amount of time remaining on the lease, or instead, as EOP urges, 15 percent of the total rents that would accrue under the lease.  The Opinion is not the first reported  decision within this Circuit to side with the term approach rather than the rents approach. Subsequently the United States Court of Appeals for the Ninth Circuit has indicated support.

Third, there is no issue available to EOP on this appeal regarding the Trustee's burden of proof about whether EOP's LOC was secured by property of the Debtor, Connectix Corporation. EOP did not preserve any such issue, did not request a trial, but instead submitted the claim objection for the bankruptcy court to rule on as a matter of law.

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Debtor was in the technology business, and sold its assets profitably in 2003.  Having no further business to conduct, it defaulted on its long term lease wherein EOP was landlord. Debtor chose not to pay EOP any further, and surrendered the leased premises to EOP. Negotiations between Debtor and EOP were not successful.  Debtor did not file its voluntary petition under Chapter 7 of the United States Bankruptcy Code - a "liquidating" bankruptcy case wherein a trustee is appointed to administer the estate - until September of 2005.  The lease was drafted to extend through July 2010, with escalating rents.

The Debtor was out of business, proceeding with its own liquidation when EOP drew $1,648,782 on the letter of credit.

The rent and other charges that the Debtor did not voluntarily pay before EOP recovered the premises aggregated to $161,588.52.  The calculation of this portion of EOP's "capped" claim is not disputed except as to application of the letter of credit.

EOP filed a proof of claim (#66) in the bankruptcy case whereby it asserted additional entitlement (under the "cap") of $2,173,695.47 based on 15% of potential (post-termination)

aggregate rents under the full term of the lease.  EOP did not subtract the amount of the letter of credit.

The Trustee objected to EOP's claim.  15% of 6.5 remaining years on the lease (2003-2010) was less than one year.  According to the chart of rent presented by EOP as part of its proof of claim, the next succeeding 12 months of rent would add up to an amount which, when added to the pre-termination defaults, and after deduction of the letter of credit, yielded an allowed claim of $446,247.06.

The Trustee followed the Bankruptcy Local Rules 9014-1 procedure whereby the claimant (EOP) was given notice of the objection and an opportunity to request a hearing.  EOP's Excerpts of Record, Doc. 1-0001, Doc. 2-0009.[3]  EOP filed a request for hearing.  Doc. 4-0013.

The Trustee gave notice of the hearing.  Doc. 6-0025.  It specifically stated:

> "PLEASE NOTE the following matter from the Local Rules:
> "3007-1.  Objections to Claim.
> "Where a factual dispute is involved, the initial hearing on an objection shall be deemed a status conference at which the Court will not receive evidence.  Where the objection involves only a matter of law, the matter may be argued at the initial hearing.  Any notice of hearing on a claim objection shall so state."

The Trustee filed a supplemental memorandum, which expressed at page 1 the Trustee's understanding that the letter of credit was secured by property of the Debtor, with a footnote stating, "The Trustee was not required to put in evidence as part of commencing the objection.  And EOP has not said that the letter of credit was not secured."  Doc. 8-0045.

At hearing on December 8, 2006, the bankruptcy court inquired more than once whether there were any factual issues, after hearing from counsel for the Trustee about the potential significance of whether or not the letter of credit was secured by property of the Debtor.  *Transcript of Proceedings*, Doc. 17-0015 ff.  EOP's counsel made a different argument - that because of the substantial amount of assets at the time of the drawdown, the draw on the LOC could not have impacted the estate.  Doc. 17-0017:1-9.  Twice counsel for EOP said he did not know if the LOC was secured by property of the Debtor.  Doc. 17-0115:25 - 17:0116:2; 17-

---

[3] EOP's excerpts of record on appeal will be referred to hereinafter as identified by the stamp of document number and consecutive page that appears at the bottom right corner of those excerpts.

0118:6-11.  Counsel for the Debtor commented, and the bankruptcy judge drew the conclusion that the fact was not disputed, and proceeded.  Doc. 17-0118:12-22.  The significance of a material fact in dispute, is that trial would have to be set on the factual issue, pursuant to the Local Rules the hearing would only have been a status conference, and the ruling could therefore not be made as a matter of law and would have to be deferred.

Counsel for EOP engaged in the legal argument as if the letter of credit were secured by property of the Debtor (which it of course was).  At various subsequent points the bankruptcy judge called for any additional contributions to the argument, and finally drew argument to a close, taking the matter under submission.

On May 10, 2007, the bankruptcy court issued its *Opinion and Order on Objection to Claim*, ruling in the Trustee's favor and therefore setting the allowed claim amount at $446,247.06.  EOP filed a timely appeal.

Although EOP devotes pages 1 and 5 to 7 of its opening brief (with various other mentions throughout)  to its characterizations of Debtor's activities concerning the termination of the lease, the payment of creditor claims, distributions to shareholders, and the Debtor's turnover of limited monies to the Chapter 7 trustee, these many "facts" lack relevance to the within appeal and were not relevant to nor a material part of the objection to claim contested matter below.  The Trustee as appellee herein lacks any reason to address this multitude of characterizations, and reserves any disputed issues that those characterizations may raise for an occasion when it is material to the bankruptcy estate.  EOP has a dispute with the Shareholders/Directors of the Debtor, which is not the Trustee's issue.  The Trustee is also suing the Shareholders/Directors of the Debtor in a separate Adversary Proceeding in order to collect sufficient funds to pay all claims in the estate in full, including the "allowed" claim of EOP.

The arguable materiality can be summarized briefly:  Debtor had received proceeds from liquidation of its business, well beyond what would have been required to pay EOP's contract damages in full and all other creditors in full, had Debtor not rendered itself insolvent by distributing approximately $27 Million in capital to its shareholders.  However, not even EOP contests that there exists a "cap" pursuant to 11 U.S.C. §502(b)(6) that applies to allowance of its

claim in the bankruptcy case, so actual materiality herein of all those "facts" is nonexistent, where the question is statutory interpretation applicable to all bankruptcy cases.

## ARGUMENT

The bankruptcy court has produced a scholarly opinion that reviews the applicable caselaw and legislative history. *In re Connectix*, 372 B.R. 488 (Bankr. N.D. Cal. 2007). It is not the Trustee's intention to repeat that content and thereby require the appellate courts to review the same matter twice. There has been little in the way of recent developments that were unavailable to the bankruptcy court for inclusion, although there have been (and doubtless will continue to be in the future) updates of treatises subsequently, and additional law review articles published, incorporating similar views.[4]

As previously stated, EOP filed a proof of claim in the amount of $2,335,283.99 consisting of $161,588.52 in unpaid rent and other charges from the period before it recovered the premises in September of 2003, and $2,173,695.47 as the balance of its lease damages as limited by the "cap". It had drawn on a Letter Of Credit ("LOC") of $1,648,782 prepetition, but declined to apply that amount against the "cap", notwithstanding that the LOC was secured by property of the Debtor. EOP used 15% of the amount of its remaining damages, rather than one year of lease rent or 15% of 6.5 years of lease rent, whichever was greater.[5]

---

[4] A subsequent trial court case in Pennsylvania stated that the plain language and legislative history of the statutory cap did not permit equitable exceptions in cases involving solvent debtors, and is for that reason of interest. *In re Flanigan*, 374 B.R. 568, 575 (Bankr. W.D.Pa. 2007). And see the discussion of *In re El Toro Materials Company, Inc.*, __ F.3d __, 2007 WL 2822019 (9th Cir. 2007) on page 9 herein.

[5] The Trustee calculated the remaining period of the lease as 6.5 years approximately, 15% of which is less than the 1 year otherwise applicable.

**A.     LETTERS OF CREDIT MUST BE APPLIED AGAINST THE "CAP"**

EOP takes the position that a LOC applied prepetition in the particular circumstances of this case should not be concluded to have diminished the estate, and therefore could be applied by the landlord to the uncapped portion of its damages rather than the limited amount allowable for specific bankruptcy estate purposes pursuant to the Code. This position is incorrect as a matter of law.[6]

There is nothing in the statute, the legislative history, or the caselaw that indicates that any determination of impact must be made on a factual, case-by-case basis. As the bankruptcy court correctly concluded after outlining the facts sufficiently for there to be no question about its awareness of those particular facts,[7] the issues were of statutory interpretation. *Flanigan* makes this point explicitly. *Id*.

It makes sense to have a single rule. If the courts have to consider the qualitatively the respective debtors, landlords, and other creditors, there will be no predictability, and a great waste of judicial resources. It makes sense to have a single rule. If the lease is terminated and the letter of credit drawn after the petition, or one day before the petition date, or 1.8 years passes after the draw, or 2.5 years passes, there is no good reason to require the bankruptcy court to inquire into the "quality" of the passage of time. The statute does not require it. As the courts have concluded, the question is whether it is intended to be a security deposit and the draw is part of the end of business allocation of assets. *Connectix* at 495-496.

EOP's various arguments about determining damages as of the petition date (EOP opening brief p. 13-15) are not persuasive. Contrary to EOP's representation at page 14, *In re Malease 14FK Corp.*, 351 B.R. 34, 41 (E.D.N.Y. 2006), is an appellate decision by a district court and states that the claim is calculated at the earlier of the petition date or the date the landlord repossessed. The statute expressly focuses on the date when the landlord repossessed or the tenant

---

[6]     *In re AB Liquidating Corp.*, 416 F.3d 961 (9th Cir. 2005); *In re Mayan Networks Corporation*, 306 B.R. 295 (9th Cir. BAP 2004); *Connectix* at 494-496, and cases analyzed therein.

[7]     *Connectix* at 489. The same argument was raised by EOP at hearing, e.g., Doc. 17-0116:22 - 17-0117:9.

1  surrendered.  11 U.S.C. §502(b)(6)(A)(ii).  Such statutory language precludes many of EOP's
2  arguments.

3       *In re Condor Systems, Inc.*, 296 B.R. 5 (BAP 9th Cir. 2003), has been appropriately
4  distinguished by the bankruptcy court below as dealing with employment claims for which the
5  specific history concerning landlords' speculative claims for future damages does not apply.  The
6  unpublished decision in *Deltagen*, discussed by EOP, is therefore built on sand and Judge
7  Morgan's Opinion more than adequately addresses its various arguments.

8       Once bankruptcy has intervened, it is no longer appropriate to look to state law contract
9  principles or policies, except to the extent incorporated within a supervening bankruptcy
10 enactment.  Claims are determined by state law principles up to a point, but no further.  The
11 bankruptcy statutes determine how those claims will be treated.  *In re Rodriguez*, 375 B.R. 535,
12 545 (BAP 9th Cir. 2007), cited by EOP, is to the same effect.  The Code is <u>not silent</u> about the
13 "cap" on a landlord's claim, and thus the whole field is occupied by Federal law of bankruptcy.

14      EOP's lengthy reliance on the *Travelers* decision[8] adds nothing to the discussion, because
15 once there is identified a specific statute which controls the treatment of a claim in bankruptcy, the
16 *Travelers* principles are at an end.  There is no reason to revert back to state law during the process
17 of application of the bankruptcy statute - a matter of Federal law.  There is no reason to construe a
18 disallowance provision narrowly, where the legislative history has specified its intent and its
19 history based on a time when the kind of claim was simply not allowable at all.  There is no reason
20 to allow for fact-based arguments about the equities, once a statutory methodology is found to
21 govern.  Thus EOP's catch-phrase about allowing claims unless specifically disallowed is
22 inapplicable.

23      EOP can point to no "textual support" for its position.  It simply desires to evade the

---

[8]  *Travelers Casualty and Surety Co. of America v. Pacific Gas and Electric Co.*, __ U.S. ___, 127 S.Ct. 1199 (2007).  The dust has not settled on what *Travelers* really means regarding the ultimate issue of allowability of claims in bankruptcy, for which see the excellent article by Taylor, Jennifer and Mertens, Christopher, *Travelers and the Implications on the Allowability of Unsecured Creditors' Claims for Post-Petition Attorneys' Fees Against the Bankruptcy Estate*, 29 Cal. Bankr. J. No. 3, 379 (2007), and 81 Am. Bankr. J. J. 123 (2007).

1  consequences of the statutory construction applicable here.

2  It is logical to consider any security-deposit-like LOC to be part of the "chomp" that the
3  landlord is taking out of estate assets in comparison to what is left for other creditors, regardless of
4  the date of the bite. It is reasonable to assume that the lease when given up is an event that
5  implicates the share left for other creditors, regardless of how long or how short someone waits to
6  file a bankruptcy case. At least part of a business is likely to be ending, which brings on the issue
7  of distribution of assets. And if bankruptcy is invoked, distribution becomes a specific matter of
8  bankruptcy law. The instant case is, after all, about EOP's desire to share in the pool of assets that
9  is now within the exclusive jurisdiction of the bankruptcy court. In that connection, EOP's
10 arguments about disallowance as effectively an unenacted "avoidance action" (page 20), also lack
11 merit. The "cap" is part of supervening bankruptcy law and is applied in disregard of landlords'
12 complaints that they do not like it and, in their view, it takes something from them. EOP-
13 Colonnade of Dallas Limited Partnership made a similar argument in *In re Stonebridge*
14 *Technologies, Inc.*, 430 F.3d 260, 269-270 (5th Cir. 2005). That court explicitly declined to apply
15 or analyze 11 U.S.C. §502(b)(6) because the landlord had not filed a proof of claim and was not
16 trying to share in the assets being administered.

17 Debtors and their creditors can wait a long or a short time before resorting to bankruptcy.
18 There is no reason to cut short possible negotiation by fixing an arbitrary amount of time at which
19 the LOC draw no longer is applied against the "cap". That could motivate filing a bankruptcy case
20 at an otherwise arbitrary point in time. There is even less reason to have a vague standard of "too
21 long before" where debtors or their non-landlord creditors could be pressed into filing a petition
22 immediately upon the landlord's draw of the LOC.

23

24 **B.    THE 15% MEANS THE TERM OF THE LEASE IN YEARS**

25 The statute, which EOP quotes in full, speaks of the <u>term</u> of the lease and not the <u>amount</u>
26 of accruing rent. The plain meaning is thus to look at years rather than dollars, as was the ruling in
27 *In re Iron Oak Supply Corp.*, 169 B.R. 414 (Bankr. E.D. Cal. 1994) as well as in the bankruptcy
28 court below. *Connectix* at 493-494. See also, the subsequent *In re El Toro Materials Company,*

*Inc.*, __ F.3d __, 2007 WL 2822019 (9th Cir. 2007) (the cap is "measured as a fraction of the remaining term").[9] Why would the statute say "not to exceed 3 years" if it was referring to dollar accumulations for a potentially very lengthy lease with lease rent increases instead of those rent amounts that would be due sooner rather than later. Years and dollars are apples and oranges. The farther into the future the calculation is based, the more speculative it becomes and the more imperative it would be to consider the time value of money. There is both greater certainty of loss to the landlord, and better equivalency to today's dollars, if one looks to the next following 15% of the remaining term of the lease.

As discussed by the bankruptcy court, there is no indication that the "cap" was designed to honor landlords' expectations damages, where that kind of claim was under prior law not allowable at all.

### C.   EOP FAILED TO PRESERVE ANY FACTUAL DISPUTE

The procedural background is set forth at pages 4-5 above. The Bankruptcy Local Rule in effect, 3007-1, provided that at the first hearing on an objection to claim, no evidence would be taken. Little burden is placed on a claimant to be heard on the objection. No burden is placed upon the objecting party to present evidence at the initial hearing. EOP had no ability to put the Trustee "on notice" that she would have to introduce evidence at the initial hearing. (EOP opening brief page 26:2-3.) If either of the parties to an objection to claim insists that a material fact is in dispute, that party's recourse is to so state in no uncertain terms and accordingly to participate in a status conference for pretrial matters such as discovery cutoff and the setting of an evidentiary hearing - rather than legal argument upon which a ruling will be based.

Even were counsel for EOP not familiar with the Northern District's local rules, the Trustee was required to, and did, notify them prominently of the procedure. The bankruptcy judge did all that could be reasonably expected to find out whether the matter was being submitted as a

---

[9] EOP has attempted to dismiss this statement as dicta, but since we are inquiring into the "plain meaning" of a statute, if the Ninth Circuit assumes that is the meaning, we should give that more than slight credence. If it quacks like a duck.

1  matter of law.  EOP never said that it was not, which it could easily have done.  Now that EOP has
2  lost at the trial court level, EOP apparently misapprehends the objection to claim process, raising
3  an argument that would only be valid were the Trustee required to proceed in the manner of a
4  summary judgment motion, and only valid had the bankruptcy court purported to resolve a
5  disputed issue.[10]

6  It is too late for EOP to sabotage the bankruptcy court's Opinion based on a contention
7  that the Trustee failed to meet a factual burden of proof.  Even now EOP does not contend,
8  because it could not so contend consistent with its duty of candor to the bankruptcy court or this
9  appellate court, that its LOC was not secured by monies of the debtor Connectix Corporation.
10 Instead, EOP was "vague" on the subject at the hearing on objection to its claim.  Instead, EOP
11 now claims that there was no cognizable evidence and that it was an unmet burden falling on the
12 Trustee.  But pursuant to Bankruptcy Local Rule 3007-1, the burden was instead the duty of
13 candor imposed on both sides.

14 The bankruptcy court put EOP's counsel on the spot to state EOP's contention, if
15 applicable, that the LOC was not secured by property of the estate, and to set trial.  EOP did not
16 preserve any such issue.

17 EOP took its one bite of the apple, hoping to prevail on the legal issues.  It lost that bet.  It
18 cannot now be heard to insist upon some kind of "leverage" of forcing the matter back to the trial
19 court for the Trustee to require EOP to produce the evidence regarding the collateralization of the
20 LOC, and for the trial court to rule that the LOC was secured by property of Connectix
21 Corporation.

---

[10]  The bankruptcy court Opinion outlined the facts as obtained from the lease document, and the representation made by Connectix' counsel at hearing. *Connectix* at 496.  The transcript of hearing provides additional information on this matter of whether EOP adequately preserved any dispute of fact. Doc. 17-0112 ff.

## CONCLUSION

For the reasons set forth above, the May 10, 2007 *Opinion and Order on Objection to Claim* should be affirmed, limiting the "capped" amount of EOP's claim to $446,246.99.

DATED: November 19, 2007.   Respectfully submitted,

STROMSHEIM & ASSOCIATES

    /s/ *Linda Sorensen*
LINDA SORENSEN
Attorneys for CAROL W. WU,
Chapter 7 Trustee for the Estate of
CONNECTIX CORPORATION
Bankruptcy Case No. 05-55648

**CERTIFICATION OF INTERESTED PARTIES REQUIRED BY BAP RULE 8010(a)-1(b)**

District Court Case No. C-07-03192 RMW, <u>In re Connectix Corporation</u>

The undersigned, Linda Sorensen, counsel of record for Appellee, certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable the Court to evaluate possible disqualification or recusal.

Carol W. Wu, Trustee
EOP-Peninsula Office Park, L.L.P.
Bonnie E. Fought
Roy K. McDonald
Jonathan F. Garber
Alan Mendelson
Frank Levinson

STROMSHEIM & ASSOCIATES                    DATED:_November 19, 2007____

BY:_*Linda Sorensen*_____
LINDA SORENSEN
Attorneys for Appellee, Carol W. Wu

**CERTIFICATION OF RELATED MATTERS REQUIRED**
**BY BAP RULE 8010 (a)-1(c)**

Case No. C-07-03192 RMW, In re Connectix Corporation.

The undersigned, counsel of record for Appellee, certifies that the following are known related cases and appeals:

*In re Connectix Corp.*, Case No. C-06-03163 JW (EOP's "First Appeal" of denial of its motion to dismiss the bankruptcy case)

STROMSHEIM & ASSOCIATES                    DATED: November 19, 2007

BY: *Linda Sorensen*
LINDA SORENSEN
Attorneys for Appellee, CAROL W. WU

**PROOF OF SERVICE**

I am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within case; my business address is 201 California Street, Suite 350, San Francisco, California 94111. On this day I caused to be served the document(s) listed below:

**BANKRUPTCY APPEAL RESPONDING BRIEF OF APPELLEE CAROL W. WU, TRUSTEE FOR DEBTOR CONNECTIX CORPORATION**

on the following parties:

Michael S. Greger, Esq.
A. Kenneth Hennesay, Jr., Esq.
James A. Timko, Esq.
Allen Matkins Leck Gamble & Mallory LLP
1900 Main Street, Fifth Floor
Irvine, CA  92614-7321

Jess B. Millikan
Bullivant Houster Bailey PC
601 California Street, Suite 1800
San Francisco, CA  94108

James A. Tiemstra
Law Offices of James A. Tiemstra
409 Thirteenth Street, 15th Floor
Oakland, CA  94612-2605

by placing a true copy thereof enclosed in a sealed envelope with first class postage thereon fully paid, in my firm's service center/mailing department. I am readily familiar with my firm's business practices, wherein all correspondence received for processing by the mailing department will be deposited this day in the U.S. Mail at San Francisco, California, in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, California, on November 19, 2007.

   /s/   Malreen Prasad
   Malreen Prasad
   Legal Assistant