1  MICHAEL S. GREGER (BAR NO. 156525)
   A. KENNETH HENNESAY, JR. (BAR NO. 187531)
2  JAMES A. TIMKO (BAR NO. 220140)
   ALLEN MATKINS LECK GAMBLE
3    MALLORY & NATSIS LLP
   1900 Main Street, Fifth Floor
4  Irvine, California 92614-7321
   Phone: (949) 553-1313
5  Fax: (949) 553-8354
   E-Mail: mgreger@allenmatkins.com
6          khennesay@allenmatkins.com
           jtimko@allenmatkins.com
7
   Attorneys for Appellant
8  EOP-Peninsula Office Park, L.L.C.

9                  UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

| 11 | In re | Case No. C-07-03192 RMW |
|---|---|---|
| 12 | CONNECTIX CORPORATION, | Chapter 7 |
| 13 | Debtor. | USBC Case No. 05-55648-MM7 |
| 14 | EOP-PENINSULA OFFICE PARK, L.L.C., | **APPELLANT'S BRIEF IN REPLY TO: (1) APPELLEE'S OPENING BRIEF AND (2) RESPONDING BRIEF OF CAROL W. WU, TRUSTEE FOR DEBTOR CONNECTIX CORPORATION** |
| 15 | Appellant, | |
| 16 | vs. | |
| 17 | CONNECTIX CORPORATION, et al., | Appeal Filed: May 17, 2007 |
| 18 | Appellees. | |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ................................................................................................1

II. THE BANKRUPTCY COURT ERRED IN REDUCING THE AMOUNT OF EOP'S ALLOWED, CAPPED CLAIM BY THE AMOUNT OF SECURITY THAT DID NOT EXIST AS OF THE PETITION DATE ............................2

    A. Bankruptcy Code Section 502(b)(6) Does Not Support The Bankruptcy Court's Ruling ................................................................................2

    B. The Legislative History of Section 502(b)(6) Does Not Support the Bankruptcy Court's Ruling – It Suggests Only That Security Held As Of The Petition Date Must Be Applied To Reduce A Landlord's Capped Claim ................................................................................................3

    C. Assuming Section 502(b)(6) Requires Nonexistent Prepetition Lease Security To Be Netted Against The Cap, The Bankruptcy Court's Ruling Ignored The Fact That There Was No Impact On The Estate As A Result Of EOP's Draw On The Letter Of Credit .............................6

    D. EOP Did Not Waive Its Objection to the Trustee's Failure to Introduce Evidence ................................................................................................7

III. THE BANKRUPTCY COURT ERRED IN CALCULATING THE CAP AS A PERCENTAGE OF THE TIME REMAINING UNDER THE LEASE ...........................................................................................................................9

IV. CONCLUSION .....................................................................................................................10

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

830427.03/OC

(i)

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

In re El Toro Materials Co., Inc., --- F.3d ---, 2007 WL 2822019, *2 (9th Cir. 2007) ................ 2, 9

In re Holm, 931 F.2d at 623 ............................................................................................................ 8

In re Mayan Networks Corporation, 306 B.R. 295 (B.A.P. 9th Cir. 2004) ........................... 6, 7, 8

Lundell v. Ancor Construction, 223 F.3d 1035 (9th Cir. 2000) ...................................................... 7

NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.,
    384 F.3d 108 (3d Cir. 2004) .................................................................................................... 3

Oldden v. Tonto Realty Corporation, 143 F.2d 916 (2nd Cir. 1944) .............................................. 5

Travelers Casualty and Surety Co. of America v. Pacific Gas and Electric Co.,
    ___ U.S. ___, 127 S.Ct. 1199 (2007) ................................................................................. 2, 4

Young v. Condor Systems, Inc. (In re Condor Systems, Inc.), 296 B.R. 5, 14
    (B.A.P. 9th Cir. 2003) .............................................................................................................. 4

**Statutes**

11 U.S.C. § 502(b)(6) ............................................................................................................. passim

11 U.S.C. § 506(a) .......................................................................................................................... 3

11 U.S.C. § 506(d) ......................................................................................................................... 3

11 U.S.C. § 547 .............................................................................................................................. 5

## I. PRELIMINARY STATEMENT

The bankruptcy court reduced the amount of EOP's allowed claim by the amount of letter of credit proceeds EOP received and applied against its damages almost two years prepetition.[1] Bankruptcy Code section 502(b)(6) does not expressly provide for such a reduction. The Trustee, the Debtor and the Insiders[2] argue that the bankruptcy court's ruling was correct because it is supported by the legislative history of section 502(b)(6), which indicates that lease security held by the landlord <u>as of the petition date</u> (rendering the landlord a secured creditor) should be netted against the cap.

The Appellees' argument, however, suffers a number of fatal flaws. <u>First</u>, as of the petition date, EOP held no lease security – the letter of credit was drawn and proceeds applied more than two years prepetition. Therefore, the legislative history of section 502(b)(6) relied upon by the Appellees and the bankruptcy court simply does not provide any basis for reducing the allowed amount of EOP's claim. To the extent that Appellees rely on bankruptcy policy or "common law" to extend the application of section 502(b)(6) to disallow claims it does not expressly cover, the United States Supreme Court has recently disposed of that argument by holding that disallowance of valid state law claims must be grounded in express provisions of the Bankruptcy Code.

<u>Second</u>, the case authority relied upon in the Trustee's objection and by the bankruptcy court in reducing EOP's claim by the amount of the letter of credit proceeds states that such disallowance is appropriate where the draw on the letter of credit affects property of the bankruptcy estate (i.e., where the draw reduces the amount of property available to other creditors). Here, EOP's draw on the letter of credit happened <u>before</u> the Insiders unlawfully took millions of dollars from the Debtor. Indeed, the Insiders took more than ten times the amount of money from the Debtor than EOP received from its draw on the Letter of Credit. Consequently, EOP's draw did not have any effect on the bankruptcy estate -- the amount available to other creditors was determined only by the Insiders' greed.

---

[1] Capitalized terms not defined herein are used in the same sense and with the same meaning as in EOP's opening brief.
[2] The Trustee, the Debtor, and the Insiders are referred to collectively herein as the "Appellees."

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

Third, the Trustee failed to present any evidence to show that the letter of credit was secured by assets of the Debtor, such that EOP's draw on the letter of credit could have had any effect on property of the bankruptcy estate. Where the basis for the Trustee's objection to EOP's claim is the letter of credit draw and the applicable authority requires analysis of impact on the estate, such evidence is necessary to support any ruling disallowing the claim. The Trustee failed to meet her evidentiary burden and the bankruptcy court erred in assuming that such evidence existed and was undisputed.

The bankruptcy court also reduced EOP's claim by adopting the 15% of rent rule instead of the 15% of time rule (which the majority of bankruptcy courts follow). The Appellees contend that the Ninth Circuit's new El Toro, decision supports application of the 15% of rent rule, but the El Toro, decision did not address the issue and the Appellees rely upon an unsupported inference from language of that decision.

The bankruptcy court's reductions of EOP's claim were based on clear legal errors. Accordingly, the bankruptcy court's ruling should be reversed and EOP's claim should be allowed in the full amount as filed.

## II. THE BANKRUPTCY COURT ERRED IN REDUCING THE AMOUNT OF EOP'S ALLOWED, CAPPED CLAIM BY THE AMOUNT OF SECURITY THAT DID NOT EXIST AS OF THE PETITION DATE

### A. Bankruptcy Code Section 502(b)(6) Does Not Support The Bankruptcy Court's Ruling

In its recent ruling, the United States Supreme Court established a simple rule of law governing the allowance of claims in bankruptcy: a bankruptcy court cannot disallow a claim that is otherwise valid under state law unless there is express "textual support" for such disallowance in the Bankruptcy Code itself. Travelers Casualty and Surety Co. of America v. Pacific Gas and Electric Co., ___ U.S. ___, 127 S.Ct. 1199 (2007). Applying Travelers to the instant case, the text of section 502(b)(6) does not expressly require the reduction of a landlord's capped claim against the estate by the amount of letter of credit proceeds (or any other security) a landlord applied to its state law damages prior to bankruptcy. Indeed, the text of section 502(b)(6) is entirely silent as to

the effect of any prepetition application of lease security.  Given that there is no textual support for such disallowance, the bankruptcy court's ruling below – which reduced EOP's capped claim under section 502(b)(6) based EOP's application of letter of credit proceeds nearly two years before the Debtor's bankruptcy filing – was in error as a matter of law.

### B. The Legislative History of Section 502(b)(6) Does Not Support the Bankruptcy Court's Ruling – It Suggests Only That Security Held As Of The Petition Date Must Be Applied To Reduce A Landlord's Capped Claim[3]

Notwithstanding the foregoing straightforward application of Supreme Court precedent, the Appellees each argue that the legislative history behind section 502(b)(6) compels the reduction of EOP's capped claim against the bankruptcy estate by the amount of its prepetition draw on a letter of credit securing the Debtor's obligations under the Lease.  But section 502(b)(6)'s legislative history only states that a security deposit that is in existence <u>as of the petition date</u> must be netted against the cap.[4]  It is entirely silent as to the affect of a landlord's <u>prepetition</u> application of lease security under state law.

In the legislative history of section 502(b)(6), Congress referred to a landlord as a secured creditor pursuant to Bankruptcy Code sections 506(a) and (d) to the extent the landlord held any lease security.  Bankruptcy Code section 506(a) provides that in order for a claim to be a secured claim, the estate must have an interest in the collateral.  11 U.S.C. § 506(a).  A debtor ceases to

---

[3]  To the extent that resort to section 502(b)(6)'s legislative history is appropriate, it states that the very purpose of section 502(b)(6) is to preserve ratable distribution among general unsecured creditors and prevent a landlord's future rent damages claim from diluting recovery of other creditors.  In this case, however, that policy simply does not apply.  This case is a classic two-party dispute between EOP and the Insiders over the value of the Debtor.  Only two other general unsecured claims have been filed in the case, totaling only about $800.  The allowance of EOP's claim in the amount sought in its proof of claim will have no substantial impact on other creditors. Reduction of EOP's allowed claim by the amount of the letter of credit proceeds is solely an effort to transfer value from EOP to the Insiders, a purpose which is inconsistent with the legislative history of section 502(b)(6) and an affront to bankruptcy principles.  <u>NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.</u>, 384 F.3d 108, 129 (3d Cir. 2004)

[4]  Where the landlord holds a security deposit as of the bankruptcy petition date, the landlord's allowable claim under section 502(b)(6) is divided into a secured claim and an unsecured claim by virtue of sections 506(a) and 506(d).  The security deposit is applied in satisfaction of the secured portion of the section 502(b)(6) claim.  <u>In re First Alliance Corp.</u>, 126 B.R. 589, 592 (Bankr. S.D. Cal. 1991) overruled on other grounds, 140 B.R. 531 (B.A.P. 9th Cir. 1992).

1 have an interest in a security deposit once it is lawfully applied under state law[5]. Therefore, a landlord that has applied its lease security prepetition cannot be a secured creditor as a matter of law. By definition, then, the legislative history of section 502(b)(6) shows that Congress only considered lease security that had <u>not</u> been applied and still existed as of the petition date.

Because the discussion in the legislative history is limited to security deposits in existence as of the petition date, the legislative history provides no guidance as to the affect of a landlord's prepetition application of lease security. Of course, without any textual support for the reduction of a landlord's claim in the Code or, at minimum, in the legislative history, under the <u>Travelers</u> rule the landlord's allowed claim cannot be disallowed. Accordingly, the bankruptcy court's ruling below fails under <u>Travelers</u>.

Recognizing the obvious lack of textual support for her argument in the Code and its legislative history, the Trustee resorts to a general policy argument that the petition date should not be relevant to the calculation of the cap under section 502(b)(6) and that it makes no difference whether the landlord was paid from lease security either prior to the petition date or after the petition date. This argument is unconvincing and contrary to applicable case law. The Ninth Circuit Bankruptcy Appellate Panel has held prepetition payments are relevant to measuring damages under state law, <u>but they are entirely irrelevant to measuring the Bankruptcy Code's cap</u> on such damages, which is done by application of a precise formula established by the Code itself. <u>See</u>, <u>Young v. Condor Systems, Inc. (In re Condor Systems, Inc.)</u>, 296 B.R. 5, 14 (B.A.P. 9th Cir. 2003).

There is a difference between prepetition and postpetition transactions. For example, subject only to preference avoidance, there is absolutely no restriction in the Code against a debtor making a significant voluntary payment to its landlord prepetition on account of lease termination damages or a landlord executing on a judgment for its lease termination damages prior to the petition date. As long as such transfers occurred more than 90 days prior to bankruptcy, they are unavoidable and, moreover, have absolutely no effect on the cap under section 502(b)(6). See 11

---

[5] <u>See</u> <u>In re ITXS, Inc.</u>, 318 B.R. 85, 89 (Bankr. W.D. Penn. 2004) ("If an otherwise valid prepetition setoff has been taken, the creditor's prepetition claim is extinguished to the extent of the setoff.").

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

830427.03/OC

-4-

1  U.S.C. § 547.  After such prepetition transfers, the landlord retains the absolute right to assert a
2  claim for its remaining damages under state law up to the amount of the cap (without reduction for
3  the prepetition payments).

4       Given the foregoing, the Trustee's real argument is not that there is no difference between
5  prepetition and postpetition transfers, but that Congress intended to <u>discriminate</u> between the type
6  of prepetition transfers a landlord receives (prepetition transfers of lease security reduce the
7  amount of the cap while other transfers do not) even through the net effect on the debtor's assets –
8  assuming the letter of credit is collateralized by the debtor's assets – <u>is exactly the same</u>.  In other
9  words, the Trustee advocates that Congress intended punish landlords who bargained for lease
10 security while rewarding landlord's who had no lease security but diligently pursued their rights
11 prepetition.  Obviously, the Code is silent and does not support such intent.  Indeed, had Congress
12 intended for such a result, it would have expressly provided in section 502(b)(6) that the cap must
13 be reduced by any prepetition transfers the landlord received on account of its lease termination
14 damages.  The fact that the Code omits such language can only mean that Congress did not intend
15 for prepetition transfers or payments – from whatever source – to have any affect on the
16 calculation of the cap.

17      Finally, the Second Circuit's ruling in <u>Oldden v. Tonto Realty Corporation</u>, 143 F.2d 916
18 (2nd Cir. 1944), also does not support the bankruptcy court's ruling.  In <u>Oldden</u>, the Second Circuit
19 reduced the cap on landlord lease termination damages under the Bankruptcy Act where the
20 landlord held a security deposit <u>as of the date bankruptcy was filed</u> and the lease terminated as a
21 result of an ipso facto clause in the lease.  Given that <u>Oldden</u> only addressed the fact pattern where
22 a security deposit had not yet been applied before bankruptcy, it provides no guidance or authority
23 for the treatment of a security deposit that had already been fully applied before the bankruptcy
24 was filed.

### C. Assuming Section 502(b)(6) Requires Nonexistent Prepetition Lease Security To Be Netted Against The Cap, The Bankruptcy Court's Ruling Ignored The Fact That There Was No Impact On The Estate As A Result Of EOP's Draw On The Letter Of Credit

The Appellees contend that the Insiders' prepetition fraudulent transfers of the Debtor's assets is irrelevant. But the relevant case law teaches that, in determining whether to reduce a landlord's allowed, capped claim based on the postpetition application of letter of credit proceeds security, the proper analysis must focus on whether such application has an impact on property of the estate. In In re Mayan Networks Corporation, 306 B.R. 295 (B.A.P. 9th Cir. 2004), the Ninth Circuit BAP concluded that a landlord's postpetition draw on a letter of credit should only be netted against the cap where such draw had an impact on the bankruptcy estate. The Mayan court explained:

> the fact that letters of credit themselves are not property of the estate is red herring. There is nothing in the statute or in case law that suggests that the limitation in § 502(b)(6) applies only to the amounts that are paid directly from property of the estate. Rather, <u>the appropriate analysis looks to the impact that the draw upon the letter of credit has on property of the estate</u>. Here, the $650,000 cash pledged to the Bank was property of the estate, and it was used in effect to pay the landlord.

Mayan, at 299 (emphasis added). Thus, under Mayan, a bankruptcy court should only reduce the landlord's capped claim by the amount of proceeds drawn against a letter of credit where the draw actually impacts the estate.

In her brief, the Trustee readily acknowledges that even after EOP's draw on the letter of credit, the Debtor retained more than sufficient funds to pay all creditors in full. The Trustee states:

> The arguable materiality can be summarized briefly: Debtor had received proceeds from liquidation of its business, well beyond what would have been required to pay EOP's contract damages in full and all other creditors in full, had Debtor not rendered itself insolvent by distributing approximately $27 Million in capital to its shareholders. Trustee Brief, pg. 5(24-27).

Given that it is undisputed that the Debtor was fully solvent both before and after EOP's draw on its letter of credit, EOP's draw on its letter of credit could not possibly have had any impact on the bankruptcy estate. Both before and after the draw, the debtor was able to pay all its debts in full. It was not EOP's draw that impacted the estate, but rather the Insider's intervening

unlawful taking of millions of dollars in cash that ultimately impacted the estate. Given that EOP's draw did not impact the property of the estate, under Mayan, EOP's allowed claim cannot be reduced by the amount of its letter of credit draw.

### D. EOP Did Not Waive Its Objection to the Trustee's Failure to Introduce Evidence

In addition to having to demonstrate an impact on the bankruptcy estate, the Court in Mayan ruled that a postpetition draw on a letter of credit should only be deducted from the cap where the letter of credit was collateralized by property of the estate. Mayan, at 299. In its initial response to the Trustee's objection, EOP raised an objection that the Trustee had failed to introduce any evidence that proved that EOP's letter of credit was collateralize by the Debtor's assets. EOP asserted:

> The Trustee has also not introduced any evidence demonstrating whether or not the Letter of Credit was even secured by the Debtor's assets. For this reason alone, the Trustee's objection must be denied. AER, Tab No. 5, pg. 22, n. 5.

Rather than dispute that the record is entirely devoid of any evidence, the Trustee, the Debtor and the Insiders instead argue that EOP somehow waived its objection the Trustee's failure to produce evidence in support of her claim objection.[6] Their position is false and is contrary to Ninth Circuit law.

As set forth in EOP's opening brief, in Lundell v. Ancor Construction, 223 F.3d 1035 (9th Cir. 2000), the Ninth Circuit analyzed the respective burdens of proof and persuasion with respect to claim objections. The Ninth Circuit stated:

> Section 501 of Title 11 of the United States Code allows creditors a means to present their claims against a debtor to the bankruptcy court by filing a proof of claim. See 11 U.S.C. § 501. Whether such a claim for which a proper proof has been filed is "allowable" is a matter for determination pursuant to 11 U.S.C. § 502 and the procedural rules governing the bankruptcy courts. These rules and our case law have put in a place a general procedure to allocate the burdens of proof and persuasion in determining whether a claim is allowable.

---

[6] Incredibly, notwithstanding counsel's representation to the Court that the fact that the letter of credit was collateralized has "been in evidence in various parts of this case for years", the Debtor does not cite to a single reference of this alleged fact to support its contention. Based upon this false representation by Debtor's counsel, the bankruptcy court apparently believed – albeit erroneously – that the Debtor had in fact submitted prior evidence to the Court proving that the letter of credit was collateralized.

> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "prima facie evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr. 9014.
>
> Upon objection, the proof of claim provides "some evidence as to it validity and amount" and is "strong enough to carry over a mere formal objection without more." Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991) (quoting 2 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed. 1991); see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.), 178 B.R. 222, 226 (Bankr. 9th Cir. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves."

In re Holm, 931 F.2d at 623.

Thus, contrary to the Appellees' arguments, the Trustee did have the burden of producing evidence to support her claim objection. Only with actual evidence to support her objection could the Trustee overcome the prima facie validity that attached to EOP's claim under Ninth Circuit law. In particular, where the Trustee's objection relies upon Mayan and is based upon EOP's application of a letter of credit, the Mayan case itself requires an analysis of whether the letter of credit draw had any impact on the estate and the Trustee was required to come forward with evidence showing an impact on the estate. Because the Trustee chose to not present evidence to meet her burden, EOP's filed proof of claim was entitled to prima facie validity and the bankruptcy court erred as a matter of law in ruling otherwise.[7]

The Trustee's argument would shift the initial burden on EOP to introduce evidence relevant to the Trustee's objection. The Trustee's position puts the cart before the course. Unless

---

[7] The Appellees' reliance on Local Bankruptcy Rule 3007-1 does not in any way support their argument. Under Local Rule 3007-1, the party serving the notice of hearing – in this case the Trustee – was required to notify other parties whether a factual dispute existed. Here, the Trustee's notice did not specify that a factual dispute existed. To the contrary, the Trustee argued that she was not required to submit any evidence to support her claim objection and that "legal issues" controlled the dispute. AER, Tab. 126, pg. 1(21-26), fn. 1. Having determined to move forward arguing that only issues of law were involved despite EOP's objection as to the lack of evidence, the Trustee's objection was limited to the argument that it was not relevant whether or no the letter of credit was collateralizing. The bankruptcy court below, however, premised her decision on the letter of credit be collateralized. Because there was no evidence to support such factual determination – particularly since EOP had objected to the lack of such evidence – the bankruptcy court's ruling was in error as a matter of law.

facts are introduced that can be disputed, there are no disputed facts before the court which would require an evidentiary hearing. To the contrary, the only thing before the court was a facially invalid claim objection because the Trustee chose to introduce no evidence to support it.

### III. THE BANKRUPTCY COURT ERRED IN CALCULATING THE CAP AS A PERCENTAGE OF THE TIME REMAINING UNDER THE LEASE

As set forth in EOP's moving papers, there is a split of authority as to the proper calculation of the 15% formula under the cap. The Appellees do not dispute the split of authority but assert that the issue may have been recently resolved by the Ninth Circuit in In re El Toro Materials Co., Inc., --- F.3d ---, 2007 WL 2822019, *2 (9th Cir. 2007). In El Toro, however, the Ninth Circuit did not address the calculation of the cap under section 502(b)(6). The opinion solely involved the question of whether certain tort damages are subject to the cap or could be allowed separately. Because the opinion did in any way involve the calculation of the cap, the language the Ninth Circuit used in El Toro was not in any way germane to the issues before this Court.

Moreover, the Ninth Circuit's statement that the 15% formula is "measured as a fraction of the remaining term" could be applied to both the Rent Approach and the Time Approach and does not resolve the issue. For example, does 15% of the remaining term meaning the next 15% of time remaining under the lease or 15% of the rent due over the remaining term. Given that the Ninth Circuit did not resolve the issue, the El Toro ruling is not relevant to this Court's decision. Rather, this Court should adopt the majority position adopted by many courts throughout the country.

//
//
//
//
//
//
//

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

830427.03/OC

-9-

## IV. CONCLUSION

For the foregoing reasons, EOP respectfully requests that the Court reverse the bankruptcy court's ruling and order that EOP's claim be allowed in the amount of $2,335,283.99.

Dated: November 29, 2007

Respectfully submitted

ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP

By: */s/ Michael S. Greger*
  MICHAEL S. GREGER
  Attorneys for Appellant
  EOP-Peninsula Office Park, L.L.C.

# PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA  )
                     ) ss.:
COUNTY OF ORANGE     )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 1900 Main Street, Fifth Floor, Irvine, California 92614-7321.

On November 29, 2007, I served on interested parties in said action the within:

**APPELLANT'S BRIEF IN REPLY TO: (1) APPELLEE'S OPENING BRIEF AND (2) RESPONDING BRIEF OF CAROL W. WU, TRUSTEE FOR DEBTOR CONNECTIX CORPORATION**

by placing a true copy thereof in sealed envelope(s) addressed as stated on the attached mailing list and causing such envelope(s) to be deposited in the U.S. Mail at Irvine, California.

I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on November 29, 2007, at Irvine, California.

| Karen Files | */s/ Karen Files* |
|---|---|
| (Type or print name) | (Signature) |

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

830427.03/OC

<u>In re Connectix Corporation</u>
USBC Case No. 05-55648-MM7
<u>EOP-Peninsula Office Park, L.L.C. vs. Connectix Corp.</u>
USDC Case No. C-07-03192 RMW

## **MAILING LIST**

**Appellee/Debtor's Counsel**

James A. Tiemstra, Esq.
Law Offices of James A. Tiemstra
409 Thirteenth Street, 15th Floor
Oakland, CA  94612-2605

**Appellee/Chapter 7 Trustee**

Carol Wu, Esq.
25A Crescent Drive #413
Pleasant Hill, CA  94523

**Appellee/Chapter 7 Trustee's Counsel**

Reidun Stromsheim, Esq.
Linda Sorensen, Esq.
Stromsheim and Associates
201 California Street, Suite 350
San Francisco, CA  94111

**Appellees/Insiders' Counsel**

Jess B. Millikan, Esq.
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, CA  94108

Richard G. Birinyi, Esq.
Bullivant Houser Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, WA  98101-1618

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

830427.03/OC